**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

CASTLE EQUIPMENT COMPANY,

Plaintiff,

v.

UNITED STATES FIRE INSURANCE COMPANY,

Defendant/Third Party Plaintiff.

v.

ANTHONY F. ROSCITI, JR.,

Third Party Defendant.

Civil Action No. 07-98S

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF UNITED STATES FIRE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Defendant/Third-Party Plaintiff, United States Fire Insurance Company ("U.S. Fire"), in the above-entitled action and pursuant to Fed. R. Civ. P. 56 and LR Cv 56(a)(1) submits this Statement of Undisputed Facts in support of its motion for summary judgment against Castle Equipment Company ("Castle").

## I. SOUTH SHORE UTILITY CONTRACTORS, INC.

### A. THE INDEMNITY AGREEMENT AND BONDS

1. On June 21, 2004, in consideration for U.S. Fire, as surety, to issue bonds on behalf of South Shore Utility Contractors, Inc. ("South Shore"), Anthony F. Rosciti, Jr. ("Rosciti"), among others, individually and on behalf of South Shore, executed a General Agreement of Indemnity (the "Indemnity Agreement") in favor of U.S. Fire. *See* Affidavit of Adam R. Schwartz, Esq. ("Schwartz Aff.") ¶ 3, Ex. A; *see also* Rosciti's Answers to U.S. Fire's

Interrogatories, Schwartz Aff. ¶ 4, Ex. B at 11 (Rosciti admitting execution of the Indemnity Agreement).

2. At all relevant times, Rosciti was the President, Treasurer and fifty percent (50%) owner of South Shore and in this capacity controlled the business operations of South Shore, oversaw the day-to-day operations of South Shore and oversaw the projects being performed by South Shore. *See* Schwartz Aff., Ex. B at 5; *see also* Deposition Transcript of Rosciti, Schwartz Aff. ¶ 5, Ex. C. at 22:17-22, 60:18-20.

3. Rosciti's cousin, Henry Rosciti, Jr., was the Vice President and the other fifty percent (50%) owner of South Shore; however, Henry Rosciti, Jr.'s role was limited to driving a truck for South Shore. Henry Rosciti, Jr. testified:

> Q: What was your position with South Shore in 2001? Did you have a title?
>
> A: I had a title. I was vice president … I didn't do anything in the office, I didn't do anything as far as company concerns, other than drive a truck. That's all.
>
> ***
>
> Q: And what were Anthony's responsibilities?
>
> A: Basically everything. He would run all the business end of it, office and management, hiring, firing, buying, selling.

*See* Deposition Transcript of Henry Rosciti, Jr., Schwartz Aff. ¶ 6, Ex. D at 8:13-18, 10:5-12.

4. Under the Indemnity Agreement, Rosciti agreed, among other things, to indemnify U.S. Fire for all losses incurred by U.S. Fire as a result of issuing bonds on behalf of South Shore. *See* Schwartz Aff. ¶ 3, Ex. A at ¶ 2; *see also* Schwartz Aff. ¶ 5, Ex. C. at 52:9-21 (Rosciti admitting obligation to indemnify U.S. Fire for losses incurred under bonds issued on behalf of South Shore).

5. Following the execution of the Indemnity Agreement, U.S. Fire, as surety, issued, among others, a Construction Payment Bond, bearing bond no. 6102466659 ("Earle Street Bond"), on behalf of South Shore, as principal, and in favor of the City of New Bedford, Massachusetts, as obligee, in connection with a project known as the "Earle Street Sewer Separation" (the "Earle Street Project"). *See* Schwartz Aff. ¶ 5, Ex. C. at 52:22-24 (Rosciti admitting issuance of Earle Street Bond).

6. U.S. Fire, as surety, also issued, among others, a Labor and Materials Bond, bearing bond no. 6102446391 ("Glendale Village Bond"), on behalf of South Shore, as principal, and in favor of the Town of Burrilville, Rhode Island, as obligee, in connection with a project known as the "Glendale Village Sanitary Sewers and Appurtenant Work" (the "Glendale Village Project"). *See* Schwartz Aff. ¶ 5, Ex. C. at 52:25, 53:1-2 (admitting issuance of Glendale Village Bond).

**B. SOUTH SHORE'S RECEIVERSHIP AND LOSSES INCURRED BY U.S. FIRE**

7. South Shore was placed into state court receivership in Rhode Island in April 2006. *See* Schwartz Aff. ¶ 4, Ex. B at 5.

8. U.S. Fire has obtained an Order in the receivership proceeding approving its claim in the amount of $2,355,373.10 for losses incurred by U.S. Fire under performance and payment bonds issued on behalf of South Shore, including the Earle Street Bond and Glendale Village Bond. *See* Schwartz Aff. ¶ 7, Ex. E.

9. In a separate action commenced by U.S. Fire against Rosciti and others under the Indemnity Agreement, U.S. Fire and Rosciti entered into a Consent Order dated March 14, 2008, whereby Rosciti granted U.S. Fire certain pre-judgment attachments, including a pre-judgment attachment of Rosciti's right, title and/or interest in Castle. *See* Schwartz Aff. ¶ 8, Ex. F.

## II. CASTLE EQUIPMENT COMPANY

### A. CORPORATE OFFICERS AND RESPONSIBILITIES

10. Castle is a heavy equipment sales and supply company. *See* Schwartz Aff. ¶ 5, Ex. C at 30:9-10.

11. Rosciti is the President, Treasurer and seventy percent (70%) majority-owner of Castle. *See* Schwartz Aff. ¶ 4, Ex. B at 4-5; *see also* Schwartz Aff. ¶ 5, Ex. C at 29:7-23.

12. As the President, Treasurer and majority-owner of Castle, Rosciti, among other things, controlled the business operations of Castle, headed the business from an operations perspective, reviewed cash flow statements, reviewed profit and loss statements and other reports, and conducted sales, leasing and rental activities on an as needed basis. *See* Schwartz Aff. ¶ 4, Ex. B at 4-5; *see also* Schwartz Aff. ¶ 5, Ex. C. at 32:10-25, 33:1-5, 60:21-23.

13. Daniel T. Clifford ("Clifford") is the Vice President, Secretary and thirty percent (30%) minority-owner of Castle, and in this capacity is responsible for conducting day-to-day sales, leases and rental activities of Castle. *See* Schwartz Aff. ¶ 4, Ex. B at 4; *see also* Deposition Transcript of Clifford, Schwartz Aff. ¶ 9, Ex. G at 11:20-25, 12:1-2; Schwartz Aff. ¶ 5, Ex. C at 32:25, 33:1-5.

### B. CLAIMS BY CASTLE UNDER EARLE STREET BOND AND GLENDALE VILLAGE BOND

14. Castle allegedly rented equipment to South Shore on, among other projects, the Earle Street Project and the Glendale Village Project. *See* Schwartz Aff. ¶ 5, Ex. C at 53:3-5.

15. In this consolidated action, Castle alleges that South Shore failed to pay Castle for the equipment, and, therefore, Castle is seeking to recover in excess of $300,000 from U.S. Fire under the Earle Street Bond and the Glendale Village Bond. *See* Schwartz Aff. ¶¶ 10-11, Ex. H-I; *see also* Schwartz Aff. ¶ 9, Ex. G at 78:5-10.

## C. ROSCITI'S OWNERSHIP AND CONTROL OF SOUTH SHORE AND CASTLE

16. As President and Treasurer of South Shore, Rosciti made the decision not to pay Castle the alleged balance due on the Earle Street Project and Glendale Village Project because Rosciti majority-owned and controlled the business operations of Castle. Rosciti testified:

> Q: Did there come a time when Castle had a large receivable that was owed by South Shore to Castle?
>
> A: Yes
>
> ***
>
> Q: Now, as president of South Shore, did you make a decision not to pay Castle for certain equipment rental?
>
> A: Yes
>
> Q: And why did you make that decision?
>
> A: Because I had other people banging on the door for money, and Castle was probably the easiest people not to pay.
>
> Q: And why would they be the easiest people not to pay?
>
> A: Because I own [Castle].

*See* Schwartz Aff. ¶ 5, Ex. C at 40:12-18, 41:1-10.

17. Simultaneously, as President, Treasurer and majority-owner of Castle, Rosciti made a decision on behalf of Castle to continue to rent equipment to South Shore notwithstanding the large receivable. Rosciti testified:

> Q: [A]s president of Castle Equipment, why did Castle Equipment let those 2005 invoices age to become such a large receivable?
>
> ***
>
> A: I think I answered your question before. It was easy not to pay me, basically.

*See* Schwartz Aff. ¶ 5, Ex. C at 59:14-24.

18. Castle had a policy that it would cease renting equipment to clients that failed to pay past due rental charges. Clifford testified:

> Q: Has there ever been a situation where Castle stopped renting to a client because they weren't paying?
>
> A: Yes
>
> Q: And who was that? Which client?
>
> A: AJ Construction is one. General Excavating would be another. I mean, there's a few. ROC Construction … Bill Ray Demolition. Those are just ones that come to the top of my head.

*See* Schwartz Aff. ¶ 9, Ex. G at 31:3-11, 59:7-25, 60:1-25, 61:1-25.

19. Despite this policy, the large receivable owed by South Shore to Castle and Rosciti's decision as President of South Shore not to pay Castle, Castle continued to rent equipment to South Shore based on Rosciti's ownership interest and control of both South Shore and Castle. Clifford testified:

> Q: Who made the decision to continue renting equipment to South Shore when South Shore had a large receivable owed to Castle?
>
> A: I guess it was both me and Anthony.
>
> Q: And Anthony was the seventy percent shareholder in the company at the time you made that decision?
>
> A: Yes.
>
> ***
>
> Q: [B]efore South Shore filed for receivership, why did Castle continue to rent equipment to South Shore when there was a large receivable?
>
> A: I always thought we were going to get paid.

> Q: But is it fair to say that you never continued to rent equipment to any other client with a receivable that large?
>
> A: Yes.
>
> Q: So why was it different with South Shore then?
>
> A: Because of Anthony.
>
> ***
>
> Q: But you never had any other customer that had a receivable this large that you continued to rent equipment to?
>
> A: Not this large.

*See* Schwartz Aff. ¶ 9, Ex. G at 72:25, 73:1-6, 78:11-24, 79:7-10.

## III. ROSCITI'S INDEMNITY OBLIGATIONS TO U.S. FIRE

20. In addition to Rosciti's role as President and Treasurer of South Shore and President and Treasurer of Castle, Rosciti is also a personal indemnitor to U.S. Fire under the Indemnity Agreement. Schwartz Aff. ¶ 3, Ex. A; *see also* Schwartz Aff. ¶ 4, Ex. B at 11 (Rosciti admitting execution of the Indemnity Agreement).

21. Based on, among other things, Rosciti's common ownership and control of South Shore and Castle, U.S. Fire denied the claims asserted by Castle under the Earle Street Bond and Glendale Village Bond. *See* Schwartz Aff. ¶ 12, Ex. J.

22. To the extent it is determined that U.S. Fire is required to pay Castle, Rosciti admits that he is obligated under the Indemnity Agreement to indemnify U.S. Fire. Rosciti testified:

> Q: [D]o you understand that if U.S. Fire pays Castle on those claims, that you would be obligated to indemnify U.S. Fire for those payments?
>
> A: Sure, yeah.

***

Q: And if U.S. Fire has to pay Castle in this litigation, how do you intend to repay U.S. Fire?

A: I'm not sure.

*See* Schwartz Aff. ¶ 5, Ex. C at 53:6-13, 61:18-22.

UNITED STATES FIRE INSURANCE COMPANY,
Defendant/Third-party Plaintiff,
By its Attorneys,

/s/ Stephen J. Brouillard
Stephen J. Brouillard, Esq. # 6284
Orson and Brusini Ltd.
325 Angell Street
Providence, RI 02906
Tel.: (401) 223-2100
Fax: (401) 861-3103
Email: sbrouillard@orsonandbrusini.com

/s/ Adam R. Schwartz
Adam R. Schwartz, Esq., *pro hac vice*
Christopher E. Kunkel, Esq., *pro hac vice*
McElroy, Deutsch, Mulvaney & Carpenter, LLP
1300 Mount Kemble Avenue
Morristown, NJ 07962
Tel.: (973) 993-8100
Fax: (973) 425-0161
Email: aschwartz@mdmc-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2008 this document has been filed electronically with the Court, is available for viewing and downloading from the ECF system, and has been served by first class mail, postage prepaid, on the following individuals:

/s/ Stephen J. Brouillard