TORT TRIAL INSURANCE
TORT TRIAL & INSURANCE PRACTICE
Committee News
ABA
Defending Liberty
Pursuing Justice

FIDELITY & SURETY
LAW COMMITTEE

NEWSLETTER

Summer 2006

# Can an Insider Recover Against its Own Payment or Performance Bond? The Effect of the Principal's Proprietary Interest in the Claimant on the Surety's Payment and Performance Bond Liability

By: Keith G. Flanagan

## I. Introduction[1]

Project owners routinely require principals to obtain payment and performance bonds to protect both themselves and innocent subcontractors from the principal's default. If the principal defaults and the claimant cannot recover from the principal, it can turn to the surety for relief. But what happens when the claimant is an alter ego of the principal? Or a wholly owned subsidiary? Or a joint venturer? Because of the commonality of their financial and other interests, such claimants are often referred to as "insiders." Indeed, distinguishing between the principal and the insider can often prove a difficult task.

As a result of the commonality of their financial interests, insiders often do not have much incentive to assert bond claims. In fact, the surety's contractual and common-law indemnity rights tend to discourage such claims. If the insider recovers, the surety will seek indemnity from the principal, whose financial rights and liabilities are involved with those of the claimant. Therefore, if the surety recovers from the principal, the payment the surety made to the insider will, in effect, come from the principal's pocket. But the principal's financial shortcomings are the primary cause of bond claims. As a result, although such claims are relatively unusual, insiders will occasionally still look to the surety for relief.

*Continued on page 11*

1 There have been several excellent articles written on this and related subjects, which the author would like to acknowledge, including Edward Etcheverry & Guy W Harrison, *Setting the Record Straight on Insider Payment Bond Claims*, Fidelity & Surety Law Committee Newsletter (Fall 2002); Michael T Trocke & Daniel G Musca, *When is a Bond Payment Claimant Not a Claimant? (Payment Claims by Claimants Related to the Bond Principal)* (presented at Northeast Sur & Fid Claims Conf . Oct 24-25, 1996); Neil L. Henrichsen, *Joint Venturers: Their Impact on the Surety's Rights and Obligations* (presented at the annual meeting of National Bond Claims Association 1995) This paper is a condensed version of a paper that was originally written and presented by the author at the Surety Claims Institute's 2005 Annual Conference Keith G Flanagan, *Can a Principal Recover on Its Own Payment or Performance Bond? The Effect of the Principal's Proprietary Interest in the Claimant on the Surety's Bond Liability and Indemnity Rights* (presented at the annual meeting of Surety Claims Institute 2005).

## In This Issue:

Can an Insider Recover Against its Own Payment or Performance Bond? The Effect of the Principal's Proprietary Interest in the Claimant on the Surety's Payment and Performance Bond Liability ........ 1
Comments From The Chair ........ 3
Hot Line Cases ........ 4
Can a Miller Act Payment Bond Surety Still Sue for Contract Funds? ........ 6
Coming Events ........ 16

*... bringing together plaintiffs' attorneys, defense attorneys and insurance and corporate counsel for the exchange of information and ideas.*

officer to withhold contract funds, and of recovering if he or she does not, the surety should be sure that its demand letter complies with FAR § 28.106-7(b), if the work is complete. The letter should also inform the Government if the contractor has falsely certified payments to its subcontractors and suppliers.

Edward Gallaher is General Counsel of *The Surety & Fidelity Association of America (SFAA)*.

## COMMENTS FROM THE CHAIR...

*Continued from page 3*

near future), assembled and published the 2006 FSLC directory (coming out any day now), and tackled important issues dealing with sponsorship, membership, diversity and the very future of the Mid-Winter meeting format. When one considers the above accomplishments and all the hard work done by FSLC members on various division subcommittees and task forces, it becomes clear that a large number of people are contributing to the continued success and vitality of the FSLC. In fact, I did a quick count and determined that during the past 12 months over 250 individual Committee members were actively involved in leadership, a program, a publication or the work of a division subcommittee. This makes the job of Chair very easy and extremely enjoyable.

It has been my honor to serve as Chair of the FSLC. I have experimented with new directions in programming and tried to put my stamp on Committee life and activities. However, the lifeblood of this organization is its members and especially its leaders. The Chair has a wealth of people to turn to for ideas. The Chair can be confident that someone will always show the requisite initiative and good judgment when dealing with a problem or issue crucial to the FSLC. The Chair never has to ask twice for help on any task that the Committee sees fit to tackle. Most important, the Chair has access to a great staff of administrators and technicians at the ABA/TIPS unit in Chicago to take care of all the details. Thank you again, Wanda Workman, Janet Hummons, Denise St Fort, Sonia Schroeder, Ken Williams, Debra Dotson, Linda Wiley, Rick Paszkiet, and the rest of our hardworking staff.

Now it's almost time for me to snatch up one of those pale blue "Past Chair" ribbons and find a good seat for next year's programs in Washington, D.C., San Francisco and Santa Fe. Thanks again for your support and encouragement.

Mike Jankowski

## Can an Insider. . .

*Continued from page 1*

Insider claims present a unique set of issues. Because their financial interests are intertwined, a claim by an insider is tantamount to the principal making a claim on its own bond. By not including the principal among eligible claimants,[2] both payment and performance bonds preclude the assertion of claims by the principal directly.[3] Hence, sureties are typically successful in denying bond claims brought directly by insiders "whose rights and obligations are co-extensive with that of the principal."[4]

Payment bond claims can also be made against the bonds of insiders and their related principals. In cases where the claimant[5] has been misled into believing it could assert a claim against the principal's bond, or was otherwise fooled by an insider relationship, some courts have allowed such claimants to assert untimely claims, while others have permitted lower tiered subcontractors to assert claims even though they fell outside of the bond's definition of a claimant, in both cases increasing the surety's exposure.[6] This article provides an overview of when sureties can successfully reject insider claims, the circumstances under which sureties have faced increased exposure, and the rationales underlying both sets of rules.

### II. Payment Bond Claims

Insider claims most often arise under payment bonds, and they typically occur in two ways: either the insider asserts a claim against a principal's bond; or, a

*Continued on page 12*

2 Under the Miller Act, only subcontractors and those "having a direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond" are considered proper bond claimants 40 U.S.C § 3133(b)(2) Similarly, the standard AIA payment bond contains an almost identical definition, limiting claimants to those "having a direct contractual relationship with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Contract." AIA A312 Payment Bond, 1987 Ed., para 15.1

3 U.S. ex rel Briggs v Grubb, 358 F.2d 508, 512 (9th Cir 1966); Am Cas Co of Reading, Pa v Assiran, 289 F Supp 645 (D Mass 1968).

4 Etcheverry, *supra* note 1, at 16

5 Under the Miller Act, which limits coverage to subcontractors and those having a direct contractual relationship with a sub-contractor, sub-subcontractors are the lowest level of claimants eligible to recover

6 *See* note 2 *supra* Under either of these definitions, subcontractors and sub-subcontractors are entitled to maintain payment bond claims; lower-tier subcontractors do not fall within the bond's definition of a claimant and are typically precluded from asserting bond claims

# Can an Insider. . .

*Continued from page 11*

claimant, who contracted with an insider, makes a claim against a principal's bond. Because payment bonds are designed to protect innocent claimants, not those acting in concert with the principal, most courts hold that insiders cannot assert claims against the principal's payment bond.[7] To hold otherwise would, in effect, make the surety a guarantor of the success of a project.[8] But, when a claimant who has contracted with an insider makes an untimely claim, courts have been more willing to expand the scope of the surety's liability to include both untimely claims and claims made by lower tiered subcontractors who do not fall within the bond's definition of a claimant, thereby increasing the scope of the surety's liability.

### A. *Payment Bond Claims by Insiders are Consistently Rejected*

Some principals hire insiders as subcontractors. While some principals do this for legitimate business reasons, others do so for more nefarious purposes. In the event of the principal's default, the unpaid insider may seek relief from the surety. Generally, the surety's contractual and common-law indemnity rights discourage insiders from making such claims. The reasoning for this is relatively straightforward: if the insider recovers from the surety, the surety will seek indemnity from the principal. Because their financial interests are so aligned, the surety's payment to the insider will, for all practical purposes, be taken from the principal's own pocket, assuming that the surety can recover from the principal. However, the principals can avoid their indemnity obligations (that is, the principal may be judgment proof): an unscrupulous principal and its insider might obtain payment for the same work twice—once when the owner pays the principal and a second time when the surety reimburses the insider. Because payment bonds do not protect those acting in concert with the principal, courts consistently reject such claims, thereby avoiding such unjust results.[9]

This rule was first established by the United States Supreme Court in *Hardaway v. National Surety Co.*[10] In that case, the plaintiff, in exchange for a share of the profits, assumed the principal's contract and financed and supervised completion of the project. It was never paid for its work. As a result, the plaintiff asserted a claim against the principal's payment bond. The surety rejected the claim, arguing that the plaintiff was not a subcontractor of the principal, but rather was a joint venturer and, therefore, not entitled to recover against the principal's bond. The Supreme Court agreed, holding that the plaintiff, as a joint venturer, did not fall within the scope of protection afforded by the bond.[11]

Nearly every decision since *Hardaway*, whether decided under the Miller Act or interpreting a public project or private project bond, has reached the same conclusion.[12] In denying recovery, some courts have conducted a fact-intensive analysis, focusing on the details of the relationship between the principal and the insider in determining whether the insider was a proper claimant.[13] Others have taken a more policy-oriented approach, explaining that otherwise "a contractor might agree to pay a brother contractor an unlimited compensation for doing the work the contractor was obligated to do, and by this devious method compel his own surety to pay a fabulous profit not covered by the bond."[14]

In 2001, however, a New York court deviated from this well-established rule and held that a "joint venturer, sublet or alter ego of the principal" could recover under a payment bond.[15] In *Cleveland Wrecking Co. v. Nova Casualty Co.*, the court rejected the surety's reliance on precedent rejecting such claims, instead focusing on the lack of controlling New York precedent and the language of the bond itself, which defined a claimant as one having a "direct contract with the principal or with a subcontractor of the principal."[16] Applying this definition, the court concluded that an insider could recover on a payment bond so long as it had a direct contract with the principal (or a subcontractor of the principal).[17] As one critic noted, "[t]his decision is indefensible, both as a matter of law and as a matter of common sense. The court's narrow focus on

---

7 Hardaway v Nat'l Sur Co , 211 U.S 552, 561 (1909); *Grubb*, 358 F.2d at 509; Theobald-Jansen Elec Co v P.H Meyer Co , 77 F.2d 27 (10th Cir 1935); U S ex rel Johnson Pugh Mech , Inc v Landmark Constr Corp , 318 F Supp 2d 1057 (D Colo 2004); *Assiran*, 289 F Supp at 646; Nat'l State Bank of Newark v Terminal Constr Co , 217 F Supp 341, 361 (D.N.J 1963); U S ex rel Walker v U.S Fid & Guar Co , 4 F Supp 854, 855 (D Wyo 1933)

8 *Nat'l State Bank of Newark*, 217 F Supp at 361

9 *See, e.g , Hardaway*, 211 U S at 561; *Assiran*, 289 F Supp at 646; *Walker*, 4 F Supp at 855

10 211 U S at 561

11 *Id* at 560

12 *Grubb*, 358 F.2d at 509; *Johnson Pugh Mech* , 318 F Supp 2d 1057; *Walker*, 4 F Supp at 855

13 *Walker*, 4 F Supp at 855

14 *Theobald-Jansen*, 77 F.2d at 29-30

15 Cleveland Wrecking Co v Nova Cas Co , No 00-CV-1003E, 2001 WL 1823604 (W.D N Y Nov 21, 2001)

16 *Id*

17 *Id*

the lack of New York state law blinded it to the most basic concepts of surety law."[18]

### B. *Claims against Insiders and Their Related Principals are Often Allowed*

In addition to claims made directly by insiders, claimants who have subcontracted with insiders can assert claims against the related principal's bond. These cases fall into two general categories. The first category involves claimants who are sub-subcontractors of the principal but have failed to provide the principal with timely notice of their claims. The second deals with lower tiered subcontractors who do not fall within the bond's definition of a claimant, but nonetheless assert a claim against the principal's bond. In either case, where the innocent claimant (or would-be claimant) is duped by the chicanery of the principal and the insider, some courts have collapsed the tier separating the two, in effect treating them as a single entity. By doing so, these courts have allowed claimants to assert untimely claims and have permitted lower tiered subcontractors to assert claims, despite the fact that they do not fall within the bond's definition of a claimant.

#### 1. *Overcoming Untimely Notice*

Some courts have permitted sub-subcontractors to assert claims against the principal's payment bond despite the claimant's failure to provide the principal with timely notice of the claim. For example, the Miller Act provides that those who have a direct contract with the principal have one year to provide the principal with written notice of their claims. Claimants who do not have a direct contractual relationship with the principal, usually sub-subcontractors, have only ninety days to provide such notice to the principal.[19] In cases where the claimant's notice was not given within the prescribed ninety-day period (but was given within one year), some courts have eliminated the tier separating the principal from the insider, treating them as a single entity. The claimant is then found to have had a direct contractual relationship with the principal and, thus, has a full year to give notice of its claim to the surety. As a result, these otherwise untimely claims become timely, allowing the claimant an opportunity to recover from the surety.[20]

Other courts have rejected claimants' attempts to overcome their failure to give timely notice, reasoning, as one court explained, that "[i]t is opposed to the Court's sense of equity and good conscience and of sound public policy to allow the surety's contingent liability to be expanded without notice and without opportunity to reject."[21]

#### 2. *Claims by Lower Tiered Claimants*

Lower tiered subcontractors have also used the insider relationship to assert claims where they would otherwise not fall within the bond's definition of a claimant. Payment bonds typically limit coverage to those having a direct contractual relationship with the contractor or a subcontractor (that is, a sub-subcontractor). However, where these lower-tiered claimants were misled into believing that they could recover against the principal's bond, some courts, applying the same reasoning described above, have ignored the legal fictions separating the principal from the insider and treated them as a single entity. As a result, the claimant is held to have had a direct contractual relationship with the principal (or a subcontractor of the principal), bringing the would-be claimant within the bond's definition of a claimant.[22] Other courts, however, have refused to increase the scope of the surety's liability, reasoning that it would be unjust to permit such claimants, who clearly do not fall within the bonds definition of a claimant, to recover.[23]

## III. Performance Bond Claims

Insider claims can arise under performance bonds as well, but only one decision has addressed this issue. In *National American Bank of Orleans v. Southcoast Contractors, Inc.*, the principal's shareholders formed a corporation called PHP to manage the construction of an apartment complex.[24] PHP then hired the principal to construct the building and required it to obtain a performance bond. When the principal defaulted, PHP agreed to complete the project. To obtain the financing to do so, PHP obtained a loan from the plaintiff bank, in exchange for which it assigned to the bank its rights under the bond. The bank then sought recovery against the principal's performance bond.[25]

*Continued on page 14*

18 Etcheverry, *supra* note 1, at 15

19 40 U.S.C. § 3133(b)(1)

20 Nat'l Sur. Corp. v. U.S. ex rel. Way Panama, S.A., 378 F.2d 294 (5th Cir. 1967) (holding surety liable to sub-subcontractor that failed to comply with Miller Act's notice provisions); John A. Hall Constr. Co. v. Boone & Darr, Inc., 302 N.W.2d 850 (Mich. Ct. App. 1980) (same under Michigan's Little Miller Act); *but see* U.S. ex rel. A. Teichert & Son, Inc. v. Anchor Contractors, Inc., 257 F. Supp. 474 (N.D. Cal. 1966)

21 *A. Teichert & Son, Inc.*, 257 F. Supp. 474

22 Seaboard Sur. Co. v. Kline, 603 A.2d 1357 (Md. Ct. Spec. App. 1992)

23 U.S. ex rel. Global Bldg. Supply, Inc. v. WNH Ltd. P'ship, 995 F.2d 515 (4th Cir. 1993) (acknowledging that lower-tier claimants may be considered proper bond claimants so long as they were able to demonstrate that piercing the corporate veil of the tiers above them was appropriate, but denying recovery under the facts of the case); U.S. v. Farina Constr. Corp., 261 F.2d 278 (D. Mass. 1966); Lezzer Cash & Carry, Inc. v. Aetna Ins. Co., 537 A.2d 857, 861 (Pa. Super. Ct. 1988)

24 276 So. 2d 777 (La. Ct. App. 1973)

25 *Id.* at 779-80

## Can an Insider. . .

*Continued from page 13*

In response, the surety argued that PHP was the principal's alter ego and that, as such, PHP was not a proper claimant under the bond. Therefore, the bank, as PHP's assignee, was precluded from asserting a claim against the bond. While the court agreed that PHP was the principal's alter ego, it permitted the bank to recover on a different ground.[26] According to the court, the surety was aware of the relationship between PHP and the principal at the time the bond was executed. The "weakness of the surety's position on this score," the court observed, "is also borne out by the fact that the close similarity of the owners of the two corporations was easily discoverable by reference to the signators who subscribed to the various documents, including the indemnity agreement. In any event, the authorized employees of the surety who were involved in the execution of the surety bond were not deluded on this count."[27] The considerations that generally preclude insiders from recovering on payment bonds—the prevention of fraud against the surety—did not exist, thereby rendering the surety liable.

While this one decision deals with an exception to the rule, the reasoning behind the prohibition of insider payment bond claims applies equally to analogous performance bond claims. Both types of bonds serve similar remedial purposes. Like payment bonds, performance bonds are intended to protect the legitimate interests of owners, who seek assurances that the contractors they hire will complete performance, not to protect those who are part of the principal's "family."[28]

If the rule were otherwise, unscrupulous insiders could exploit the surety, forcing the surety to complete a project at no cost to themselves. The obligee could hire an insider as general contractor and pay the insider in advance for the construction work. The insider/general contractor might use the funds to pay unrelated obligations or otherwise abscond with the funds and then default on the bonded project. If the surety steps in and completes the project, the project will, in effect, be financed by the surety at no cost to the obligee. Because the obligee's financial interests are closely aligned with those of the insider, the money it paid to the insider is not lost; it has merely passed, for all practical purposes, from the obligee's left hand to its right. Performance bonds are not intended to protect against such risk.

### IV. Conclusion

Insider claims present a unique set of problems for the surety. On the one hand, claims by insiders are routinely rejected because they are contrary to the remedial purpose that both payment and performance bonds serve. Such bonds protect innocent claimants, not those acting in concert with the principal. On the other hand, some claimants and lower tiered subcontractors have persuaded courts to reject the legal fictions separating the principal from the insider and to treat them as a single entity. As a result, claimants, who would have otherwise been precluded from asserting bond claims, have been permitted to do so. Sureties, in order to protect themselves from unwanted liability, should carefully investigate the identity of the principal, its owners, officers, and directors, and those with whom it contracts to ensure that the principal is not contracting with an insider and to properly defend against such claims where the grounds to do so exist.

Keith G. Flanagan is an associate in the Chicago, Illinois, law firm of *Clausen Miller, P.C.*, where he represents insurance carriers in both fidelity and surety matters. Mr. Flanagan is a member of the ABA's Fidelity & Surety Law Committee. He earned his B.A. from Georgetown University, and his J.D. degree from Boston University.

26 *Id.* at 781

27 *Id.*

## CALLING ALL YOUNG PROFESSIONALS!!

Networking, Camaraderie, Relationship Building. The Young Professionals Subcommittee ("YPS") is the gateway to the Fidelity & Surety Law Committee. YPS sponsored networking events at Fidelity & Surety Law Committee programs provide small settings for interaction with fellow young professionals. If you are age 40 or under, or have been practicing for five years or less, we invite you to join YPS. Please contact Jamie Ziegler (jziegler@stpaultravelers.com), Omar Harb (oharb@albercrafton.com), or Ali Adams (aadams@mpdlegal.com) for more information.

When does crime pay? Mark your calendars for the upcoming Annotated Commercial Crime Policy program on October 5 and 6, 2006, in Washington D.C. Our communications co-chair, Chris Ward, will be planning a social event for that program. Details will follow on the list-serve email, but only if you sign up for YPS.

Looking for publishing opportunities? You could be a featured contributor in an upcoming issue of the Fidelity & Surety Law Committee Newsletter. For more information, please contact Newsletter Editor-in-Chief, Jeff Paskert (jpaskert@mpdlegal.com), or Chris Ward (christopher.ward@strasburger.com).