**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

Castle Equipment Company,
Plaintiff

v.

United States Fire Insurance Company,
Defendant/Third Party Plaintiff

v.

Anthony F. Rosciti, Jr.,
Third Party Defendant

Civil Action No. 07-98S
(Consolidated)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF CASTLE EQUIPMENT COMPANY'S OPPOSITION TO DEFENDANT UNITED STATES FIRE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

## AND

## PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

### Preliminary Statement

This case concerns two State law payment bond claims brought by Castle Equipment Company against the surety, U.S. Fire Insurance Company. Castle rented equipment to a general contractor, South Shore Utility Contractor, Inc. for public construction projects located in New Bedford, Massachusetts and Burrillville, Rhode Island. U. S. Fire issued a payment bond for each project pursuant to each state's pubic construction payment bond statute with South Shore as the principal for each bond.

The claimant, Castle Equipment Company, has two shareholders; Anthony Rosciti, Jr. who owns 70% of Castle's stock and Daniel Clifford who owns 30% of the remaining company stock. Anthony Rosciti, Jr. is also a 50% owner of South Shore Utility Contractors, Inc.

U.S. Fire contends as a matter of law that Castle is not a proper claimant under each bond due to Anthony Rosciti, Jr.'s ownership in South Shore and his controlling interest in Castle. U.S. Fire relies on a series of federal cases that decided Federal Miller Act payment bond claims which hold in certain circumstances that related entities may not bring a claim on a Miller Act payment bond. U.S. Fire asserts, without any controlling authority, that both Massachusetts and Rhode Island would adopt the reasoning of the Miller Act cases.

Castle counters that it is a proper claimant under both payment bonds. Neither project is governed by the Miller Act. Moreover, neither Massachusetts nor Rhode Island have indicated a willingness to adopt the restrictive Miller Act holdings. Both payment bonds and both public construction payment bond statutes are clear and unambiguous. Castle is a proper claimant under the plain reading of both the applicable bonds and the statutes.

Castle also asserts that there is no genuine issue of material fact concerning its claim for payment against U.S. Fire. U.S. Fire's only articulated defense is its blanket reliance on the Miller Act cases. U.S. Fire has not articulated any other defense, factual or otherwise, to Castle's claims. Accordingly, Castle asserts that it is entitled to summary judgment against U.S. Fire in the amount of $ 331,301.38 together with interest, costs, and attorney's fees.

## Statement of Facts

### I. Introduction

#### A. Castle Equipment Company

Plaintiff, Castle Equipment Company ("Castle"), is a Rhode Island corporation formed in 2004 by Anthony Rosciti, Jr. ("Rosciti") and Daniel Clifford ("Clifford"). (Clifford aff. ¶ 1). At all relevant times hereto, Castle has and continues to be owned by Rosciti and Clifford with Rosciti owning seventy percent (70%) of the company and Clifford owning the remaining thirty percent (30%). (Clifford aff. ¶ 2)

Castle owns a large inventory of heavy construction equipment which it in turn rents and sells to contractors in the Rhode Island/Massachusetts area. (Clifford aff. ¶ 5). Thus, Castle's business is essentially one of an equipment supplier to customers in need of construction equipment which is normally conducted in one of two forms. For the most part, Castle either rents its equipment to its contractor/customer on a per diem basis or it sells the equipment outright to its customer.

Castle's business operations are limited to the retail business. Castle is not a manufacturer and it therefore must necessarily purchase its equipment inventory from another source (in many cases Terex). (Clifford aff. ¶ 6). Castles finances its own equipment purchases either directly through its equipment supplier or by utilizing an independent lender. (Clifford aff. ¶ 6). At the time Castle was supplying equipment to South Shore Utility Company, Inc. on the two (2) projects in question, Castle had outstanding loans with both Terex and G.E. Capital to the tune of approximately two million five hundred thousand dollars ($2,500,00.00) (Clifford aff. ¶ 7). Castle has since refinanced these loans with Sovereign Bank and the outstanding balance

on said loans is approximately two million dollars ($2,000,000.00). (Clifford aff. ¶ 8). Both Rosciti and Clifford are personal guarantors of the outstanding Castle-Sovereign Bank loans. (Clifford aff. ¶ 9).

Both Rosciti and Clifford participate in Castle's management, however, by virtue of his greater ownership interest, Rosciti makes the majority of the business decisions. (Clifford aff. ¶ 10). Clifford is responsible for the day to day sales efforts on behalf of Castle. (Clifford aff. ¶ 11). Clifford's primary role is to promote Castle's business operations by marketing Castle to construction companies and other prospective customers. (Clifford aff. ¶ 12). Clifford spends the majority of his time outside of the company's offices visiting customers and promoting the company. (Clifford aff. ¶ 13). Besides employing Clifford, Castle employs other individuals who service the construction equipment and maintain the company's accounts payable and receivable records. (Clifford aff. ¶ 14)

Immediately before Clifford and Rosciti formed Castle, Clifford was employed by another equipment rental company (T-Quip). (Clifford aff. ¶ 15). Clifford took a tremendous pay cut to start Castle with Rosciti. (Clifford aff. ¶ 16).

Castle has always operated as a separate and legitimate business. (Clifford aff. ¶ 17) Castle rents equipment to several other non-related construction companies and is actively seeking to increase its business. (Clifford aff. ¶ 18). Castle files its own tax returns and it files annual reports with the Secretary of State's office. (Rosciti aff. ¶ 29)

Finally, although Rosciti owns the majority interest in Castle, he was not paid a salary from the plaintiff company. (Clifford aff. ¶ 17).

**B. South Shore Utility Contractors, Inc.**

South Shore Utility Contractors, Inc. ("South Shore") is a Rhode Island corporation formed in 2001.[1] (Rosciti aff. ¶ 6). The shareholders are Rosciti and his cousin Henry Rosciti ("Henry") who each own fifty percent (50%) of this company. (Rosciti aff. ¶ 6). South Shore generally performed utility contracting work in the greater New England area. (Rosciti aff. ¶ 7).

**C. The New Bedford Project a/k/a the Earle Street Sewer Project.**

This case deals with two public construction projects. The first project is a public works sewer project located in New Bedford Massachusetts. (Rosciti aff. ¶ 8). The City of New Bedford in its capacity as the owner entered into a contract with South Shore as the general contractor for sewer line work. (Rosciti aff. ¶ 8). The Project is commonly referred to as the Earle Street Sewer Project. (Rosciti aff. ¶ 9). The gross amount of the contract between New Bedford and South Shore exceeded three million dollars ($3,000,000.00). (Rosciti aff. ¶ 10).

**1. The New Bedford payment bond.**

The Commonwealth of Massachusetts like most states and other public entities in this country require a general contractor looking to perform work on a publicly funded project to procure a payment bond. <u>See</u> M.G.L. c. 149, section 29. In a generic sense, the payment bond essentially guarantees payment for subcontractors and vendors who perform work on behalf of the general contractor on the public works project.[2]

In order to comply with the mandate of M.G.L. c. 149, section 29, South Shore procured

---

[1] South Shore was formed three (3) years prior to the formation of Castle.

[2] The payment bond acts as a safeguard for the public owner as it avoids subcontractors and vendors looking to the public owner for payment in the event the general contractor fails to pay them for their work on the public project. The payment bond requirement also serves as a substitute for the mechanic's lien method of securing of payment for subcontractors and equipment suppliers since public projects are universally immune from the mechanic's lien process.

Payment Bond #6102446391 from Defendant United States Fire Insurance Company (USFIC) on or about January 1, 2005 to bond the New Bedford Project. The payment bond in the amount of three million three hundred sixty two thousand five hundred eighty dollars and 96/100 ($3,362,580.96) issued in favor of the City of New Bedford (owner) to ensure payment by South Shore to any subcontractors and suppliers working on the project.[3] (Rosciti aff. ¶ 12).

**D. The Burriville Project a/k/a the Glendale Village Project.**

The second project at issue is also a public works sewer project. (Rosciti aff. ¶ 16). This project was located in Burrillville, Rhode Island. (Rosciti aff. ¶ 16). The Town of Burrillville in its capacity as owner entered into a contract with South Shore as general contractor for certain sewer line work. (Rosciti aff. ¶ 16). The Project is sometimes referred to as the Glendale Village Project. (Rosciti aff. ¶ 17). The gross amount of the contract between Burrillville and South Shore exceeded two million dollars ($2,000,000.00). (Rosciti aff. ¶ 18).

**1. The Burriville payment bond.**

Rhode Island law likewise required South Shore to provide a payment bond on a public works project. R.I.G.L. § 37-13-14 and 37-12-1, et seq. In order to commence work on the Burriville project and in compliance with Rhode Island law, South Shore procured a labor and materials bond[4] from USFIC in the principal amount of two million twenty six thousand three hundred fifty two dollars and 50/100 ($2,026,352.50) again to ensure payment by South Shore of its subcontractors, suppliers and vendors on the project. (Rosciti aff. ¶ 19). This payment bond

[3] The Payment Bond was signed by Beryl A. Finn, attorney in fact for USFIC and Rosciti in his capacity as President of South Shore. (Rosciti aff. ¶ 14).

[4] There is no real distinction between a "labor and materials" bond and a "payment" bond both of which essentially guarantee payment to South Shore's subcontractors and vendors. For purposes of uniformity, the bonds at issue in this case will be referred to herein as "payment" bonds.

was issued on or about March 1, 2005.[5]

**E. South Shore rents equipment from Castle to perform its work on the New Bedford and the Burriville projects.**

The work South Shore was required to perform on both public works projects required the use of heavy construction equipment. (Clifford aff. ¶ 22). South Shore rented this equipment from Castle over the course of 2005 and early 2006. (Rosciti aff. ¶ 28). Castle is owed $233,396.38 for the rental equipment it supplied South Shore on the New Bedford project. (Rosciti aff. ¶ 28). With respect to the Burrillville project, South Shore has an outstanding balance with Castle in the amount of $97,905.00. (Rosciti aff. ¶ 28). The amounts due for both projects are based upon the fair market rates for the equipment that was rented.[6] (Rosciti aff. ¶ 28)

**F. South Shore's financial difficulties cause it to be placed into state court receivership.**

During the course of performing the Massachusetts and Rhode Island projects which are at dispute in this case[7], South Shore found itself in financial difficulty. (Rosciti aff. ¶ 23). The financial difficulty was caused in large part for non-payment of work performed by South Shore on a project located in Connecticut. South Shore was owed in excess of one million and no/100

---

[5] Like the New Bedford payment bond, the bond for the Burriville project was signed by Beryl A. Finn, Attorney in Fact for USFIC and Rosciti on behalf of South Shore. (Rosciti aff. ¶ 21)

[6] USFIC has never challenged the amounts due Castle for equipment supplied at the New Bedford and Burriville projects. USFIC rests its entire defense on whether or not Castle is a proper claimant under the respective bonds issued for these two (2) projects. As will be seen below, Castle has filed a Cross-Motion for Summary Judgment seeking judgment as a matter of law in its favor against USFIC for the outstanding balances. In the event this Court denies USFIC's Motion for Summary Judgment and rules that Castle is a proper claimant on the payment bonds at issue in this case, Castle is then entitled to judgment as a matter of law in the principal amount of $233,396.38 for the New Bedford project and $97,905.00 on the Burriville project. This does not tally any statutory interest, costs or reasonable attorney's fees Castle may be entitled to as a prevailing party in these matters.

[7] These projects include work performed in Burriville, Rhode Island and New Bedford, Massachusetts and will be more particularly described below.

($1,000,000.00) dollars for work performed on this Connecticut project. (Rosciti aff. ¶ 24). The lack of payment on the Connecticut project caused financial hardship for South Shore. (Rosciti aff. ¶ 23). It resulted in serious cash flow shortages for the company which in turn caused South Shore to be unable to meet its financial obligations on the New Bedford and Burrillville projects including payments to a number of its subcontractors and suppliers. (Rosciti aff. ¶ 25).

As illustrated above, one of the unpaid vendors included Castle. (Rosciti aff. ¶ 28). A review of USFIC's records maintained by Beacon Consulting, Group, Inc., a construction consultant hired by USFIC, indicate that USFIC received over $650,000.00 in payment bond claims arising out of the New Bedford and Burriville projects exclusive of the sums due Castle. (DeMello aff. ¶ 5)

Unable to meet its financial obligations, South Shore was ultimately petitioned into receivership in early 2006. (Rosciti aff. ¶ 27). It was the intent of South Shore to pay its subcontractors including Castle for work, services and equipment provided on these two (2) projects but the company's dire financial condition and the receivership filing preempted South Shore from making any further payments. (Rosciti aff. ¶ 33).

**G. USFIC denies Castle's bond claims on both projects.**

Like South Shore's other subcontractors who failed to receive payment on the New Bedford and Burriville projects, Castle filed a bond claim with USFIC against the respective payment bonds. (Rosciti aff. ¶ 30) USFIC denied Castle's claims on the grounds that Castle and South Shore were related entities. (Rosciti aff. ¶ 31). Castle originally brought two separate state court actions – one action in the Commonwealth of Massachusetts Superior Court and the other in the State of Rhode Island Superior Court seeking payment pursuant to the two (2)

payment bonds issued by USFIC. (Rosciti aff. ¶ 36). USFIC subsequently removed those two cases to Federal court. (Rosciti aff. ¶ 37) The New Bedford claim commenced in the Massachusetts Superior Court was removed to the United States District Court for the District of Massachusetts. The Burriville claim initiated in the Rhode Island Superior Court was removed to the District of Rhode Island. The two (2) federal cases have since been consolidated in this Court. (Rosciti aff. ¶ 37).

**Legal Argument**

## II. Legal Argument

### A. Standard of Review

Summary judgment should be granted if "the pleadings, the discovery and disclosure materials on file and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

The only substantive issue raised by USFIC in its motion for summary judgment is whether or not Castle is a proper claimant under the two (2) payment bonds that USFIC issued on the New Bedford and Burrillville projects. The parties agree that there are no genuine issues of material fact bearing on this issue. This is a straight up legal issue for this Court to decide as the interpretation and application of the relevant statutes and payment bonds are matters of law for the Court. *See Doyle v. Huntress, Inc.*, 301 F.Supp.2d 135, 141 (D.R.I. 2004) and *In re Newport Plaza Associates*, *L.P.*, 985 F.2d 640, 644 1st Cir. (R.I. 1993).

As will be discussed below, Castle is a proper claimant under both payment bonds. To this end, it is Castle, not USFIC, who is the party entitled to judgment as a matter of law.

**B. CASTLE IS A PROPER CLAIMANT UNDER THE TWO PAYMENT BONDS ISSUED BY USFIC.**

**1. The New Bedford and Burrillville projects are not governed by the Miller Act.**

USFIC's claim to judgment as a matter of law rests solely on the misguided premise that the Miller Act (40 U.S.C.A. 3131(b)) is the legal authority controlling the construction and application of the New Bedford and Burriville payment bonds. The Miller Act does not control either the New Bedford or the Burrillville project. The Miller Act is federal legislation which applies only in the arena of public buildings or public works involving the federal government. 40 U.S.C.A. 3131(b). The Miller Act provides a specific and detailed statutory framework for payment bond claims on federal government projects. See 40 U.S.C.A. 3131, et seq. The New Bedford and Burrillville Projects are not federal government projects. These projects are strictly state public construction projects governed by Massachusetts and Rhode Island state law not the Miller Act.

**2. Neither Massachusetts nor Rhode Island have adopted the Miller Act's prohibition on "related entity" claims on payment bonds under their respective public construction payment bond statutes.**

USFIC suggests that Castle is not a proper claimant under either payment bond since Rosciti holds an ownership interest in both South Shore and Castle. USFIC points the Court to cases expounding upon the Miller Act's prohibition against "related entity" claims. USFIC states that claimants who are closely related and/or controlled by the principal of the bond are prohibited from making a claim against the bond.

Although USFIC acknowledges in its brief that neither Massachusetts nor Rhode Island

have expressly adopted the Miller Act's prohibition against "related entity" claims[8], USFIC nevertheless asks this Court to make the giant leap that both states would follow the Miller Act in this area. Castle flat out disagrees with this assertion. To the contrary, Castle opines that the clear and unambiguous language of the Massachusetts and Rhode Island payment bond statutes, and the New Bedford and Burriville bonds themselves along with a review of some case law at least with respect to Massachusetts law demonstrate that neither Massachusetts nor Rhode Island would adopt the Miller Act's prohibition on "related entity" claims as urged by USFIC.

**2. A plain reading of both public construction payment bond statutes indicates that Castle is a proper claimant.**

Both Massachusetts and Rhode Island adhere to the principle that when interpreting a statute, the statute should be given its plain and ordinary meaning absent an ambiguity. *State v. Greenberg*, ____ A.2d ____, 2008 WL 2685992 (2008 R.I.) and *Department of Community Affairs v. Massachusetts State College Building Authority*, 378 Mass. 418 (1979). A Court cannot resort to extrinsic evidence to vary the plain meaning of a clear, unambiguous statute. *Id*. A federal court under diversity jurisdiction follows the law of the state in deciding the dispute. *Carlton v. Worcester Insurance Company*, 923 F.2d 1, 3 1st Cir. (R.I. 1991).

**A. M.G.L. c. 149, section 29.**

The New Bedford payment bond is governed by M.G.L. c. 149, section 29. The Massachusetts statute requires a general contractor, such as South Shore, who contracts with a city to perform on a public works project having a value greater than two thousand dollars ($2,000.00) to provide:

> "security by bond in an amount not less than one half of the total contract price, .... for payment by such contractor.... **of any sums due**

[8] See USFIC's Memorandum of Law at pg. 9.

> **for the rental or hire of vehicles, steam shovels, rollers propelled by steam or other power, concrete mixers, tools and other appliances and equipment employed**" [emphasis added].

The statute goes on to describe who may bring an action for payment by the Surety:

> "**<u>any</u> <u>claimant</u>** having a contractual relationship with the contractor principal furnishing the bond, **<u>who has not been paid in full for any amount claimed due</u>**" [emphasis added].

The Massachusetts statute has no other qualifying conditions on who is a proper claimant. There is no language barring or for that matter discussing the concept of related entities.

**B. R.I.G.L. § 37-13-14 and 37-12-1 et seq.**

The Burrillville project is also governed by a public construction payment bond statute similar to the Massachusetts' statute referenced above. The operative statute in Rhode Island is R.I.G.L. § 37-13-14. This statute provides that any contractor entering into a public works contract with a city or town having a value greater than $50,000.00 must "file with the proper authority good and sufficient bond with surety . . . conditioned upon the faithful performance of the contract and upon the payment for labor performed and material furnished in connection" with the project. R.I.G.L. 37-13-14.

The statute further requires that the bond provided by the contractor must comply with R.I.G.L. § 37-12-1 et. seq. These provisions require the surety and the principal to:

> **promptly pay for <u>all</u> such labor performed or furnished and for <u>all</u> such materials and equipment furnished,** (which to equipment shall mean payment of the reasonable rental value....of its use during the period of its use), as shall be used in the carrying on of the work covered by the contract, or shall see that they are promptly paid for, .... and whether or not the equipment is furnished to the contractor or even directly used upon the work. [emphasis added] R.I.G.L. 37-12-1.

Like its Massachusetts counterpart, there is no language in the Rhode Island statutory scheme barring bond claims by related entities.

The statutory framework in both Massachusetts and Rhode Island are clear, succinct and unambiguous. The Massachusetts statute allows any claimant, who has a direct contract with South Shore to bring an action against USFIC for "any sums due". Likewise the Rhode Island statute clearly provides that the payment bond is to pay for "all" labor and equipment provided on a public project. Both statutes refer to "claimants" and neither statute limits a claimant to an "unrelated entity".

The clear, plain meaning of both statutes is that Castle is a proper claimant under both payment bonds because it had a direct contract with South Shore and it has not been paid for equipment rented to South Shore that was used on both projects. There is no need to resort to a Miller Act analysis because there is no ambiguity in either statute. The Massachusetts and Rhode Island legislatures have both spoken on the issue of who is a proper claimant to a bond issued for a public works project in their respective jurisdictions.[9] Accordingly, neither statute prohibits Castle's claims for equipment supplied for the benefit of New Bedford and Burriville. Castle is a proper claimant on both bonds.

**3. A plain reading of both payment bonds indicates that Castle is a proper claimant.**

Notwithstanding the fact that the payment bonds in dispute here were issued as a result of a statutory mandate, the payment bonds are indeed contracts. Once again both Rhode Island and Massachusetts adhere to the principle that when interpreting an unambiguous contract, the contract's plain and ordinary meaning should be given effect. *National Refrigeration, Inc. v*

[9] One would assume that Massachusetts or Rhode Island could have enacted language in their statute to place any limitations on a claimant.

*Standen Contracting Company, Inc.*, 942 A.2d 968, 972 (R.I. 2008) and *Suffolk Construction Company, Inc. v. Lanco Scaffolding Co., Inc.*, 47 Mass.App.Ct. 726, 729 (1999).

The New Bedford payment bond provides in relevant part at paragraph 1:

> The Contractor and the Surety, **jointly and severally**, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner **to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract**, which is incorporated herein by reference. [emphasis added].
>
> Rosciti aff. at ¶ 11 at Exhibit A.

Most importantly, Paragraph 15.1 defines a claimant as:

> <u>**An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Contract.**</u> **The intent of this Bond shall be to include without limitation** in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or **rental equipment used in the Construction Contract**, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, a**nd all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished**. [Emphasis added]

Finally, paragraph 13 provides that the Payment Bond is to be considered a statutory bond and that any portion of the bond that conflicts with the statutory requirements will be considered deleted from the bond.

The Burrillville payment bond is also written contract that contained its own terms and conditions. Paragraph (a) of the Burriville payment bond defines a claimant as

> one having a direct contract with the Principal [South Shore] or with a subcontractor of the Principal for labor, materials and/or **equipment** used or reasonably required for use in the performance of the said Work, l**abor and materials being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental or equipment** directly applicable to the said Agreement and/or Contract

and any modifications thereof. [emphasis added].

Paragraph (b) provides that the surety (USFIC) and the principal (South Shore) are jointly and severally liable to "every claimant as herein defined...for such sum or sums as may be justly due" a claimant.

As with the statutory provisions, the payment bonds themselves clearly allow Castle to be a claimant. They both jointly and severally obligate USFIC (surety) to pay for labor, materials and equipment used on the projects. USFIC would not be obliged to make payment if South Shore had made payment to Castle for "all sums due". Clearly this did not occur. Moreover, neither payment bond limits a claimant to an “unrelated entity”. Once again this Court does not need to inquire any further than the plain and unambiguous language of the payment bonds themselves. Castle is a claimant who had a direct contract with South Shore. South Shore did not pay Castle and, therefore, Castle is entitled to bring an action for payment against USFIC who is jointly and severally liable with South Shore for the payments that are due Castle.

**4. Massachusetts and Rhode Island decisions indicate that neither state would adopt the Miller Act's prohibition on "related entity" payment bonds claims.**

Neither Massachusetts nor Rhode Island have addressed the issue of whether a "related entity" such as Castle would be prohibited from making a payment bond claim pursuant to either State's public construction payment bond statutes. While both states have looked to the Miller Act when interpreting their respective public project payment bond statutes, neither has indicated that its policy is to adopt all interpretations espoused by the Federal courts under the Miller Act. Massachusetts has specifically rejected the Miller Act interpretations by the federal courts when deciding payment bond cases under M.G.L. c. 149, section 29.

The Massachusetts Supreme Judicial Court in *Peters v. Hartford Accident and Indemnity Company*, 377 Mass. 863 (1979) had to decide, as this Court must, whether the plaintiffs were proper claimants under a payment bond issued pursuant to M.G.L. c. 149, section 29. In *Peters* the Court was required to decide whether M.G.L. c. 149, section 29's use of the term "subcontractor" included a "sub-subcontractor". *Peters* at 863-864. The defendant surety company asserted that the statute's use of the term "subcontractor" did not include "sub-subcontractors" as the federal courts have held under the Miller Act. *Id*. The surety's position was, in the words of the Supreme Judicial Court, bolstered by the United States Supreme Court's then recent decision in *J.W. Bateson Co. v. United States, ex rel. Bd. of Trustees*, 434 U.S. 586 (1978). *Id*. at 868 fn. 12. The United States Supreme Court had held that the term "subcontractor" as used in the Miller Act did not include "sub-subcontractors" and therefore a claimant was limited to one who contracts directly with a prime contractor – a subcontractor - as opposed to a subcontractor to subcontractor.. *Id*. This was exactly the same issue that the Massachusetts Court was addressing in *Peters*.

Notwithstanding the United States Supreme Court's decision, the Massachusetts Supreme Judicial Court specifically rejected the United States Supreme Court's interpretation of the Miller Act as it applies to M.G.L. c 149, section 29. *Peters* at 869. The *Peters* Court held that M.G.L. c. 149, section 29 is to "be given a broad or liberal construction to accomplish its intended purpose." *Id*. The *Peters* Court gave such a broad and liberal interpretation by holding that M.G.L. c. 149, section 29's use of the term "subcontractor" included "sub-subcontractors" which was directly contrary to the Federal Court's analogous holdings under the Miler Act.

The Massachusetts Supreme Judicial Court's holding in *Peters* demonstrates that the

Court places emphasis on ensuring payment to subcontractors, like Castle, who provide labor, material or equipment for use on public construction projects as opposed to protecting a surety from potentially fraudulent claims by "related entities". The *Peters* Court stated:

> [L]imiting claims to those of laborers and materialmen employed by first-level subcontractors, could make possible an effective subversion of the broadly remedial statutory purpose. By creating 'straw' subcontractors, who then contracted with sub-subcontractors for the actual performance of the work....the general contractor could insulate the surety from s. 29 claims on the bond.
>
> *Peters* at 871.

The Court went on to state:

> Finally, the result we reach furthers the public policy of ensuring security for all laborers working at a public project site, and thereby promotes the unhampered completion of such projects. We decline to drive a 'wedge between employees working side by side on tasks equally vital to the 'prosecution of the work'. citing *Bateson*, 434 U.S. at 595 (Stevens, J., dissenting)

The holding in Peters is illustrative of the fact that the Supreme Judicial Court of Massachusetts, in passing upon its own statutory scheme for public bonds, conducts an independent analysis and does not simply rely upon federal judicial decisions interpreting the Miller Act. Like the surety unsuccessfully posited in *Peters*, USFIC is asking this Court to find that Castle is not a proper claimant based upon a restrictive interpretation by federal courts under the Miller Act. USFIC is attempting to place an artificial barrier to Castle's claim by trying to have this Court follow the Miller Act in all instances when the Massachusetts Court has clearly shown that it will not impose such limits. The Massachusetts Supreme Judicial Court has clearly spoken by espousing that M.G.L. c. 149, section 29 must be liberally and broadly construed to ensure prompt payment for labor, materials and equipment used on public projects.

This is not the only instance where the Massachusetts Courts have departed from federal decisions interpreting the Miller Act. For example, both the Miller Act and M.G.L. c. 149, section 29 require claimants to bring their claims withing a prescribed period of time that is measured from the date the claimant last performed work on the project. Under the Miller Act, only work performed under the original contract is considered in determining when the claimant last performed work on the project. See *U.S. ex rel Billows Electric Supply Company, Inc. v. E.J.T. Construction Co., Inc.*, 517 F.Supp. 1178, 1181 (D.C. Pa. 1981). Work performed to repair previously performed work does not act to extend the time period for bringing a claim under the Miller Act. *Id*. Federal courts do not allow claimants an opportunity to extend the notice periods for bringing a claim by performing corrective work after the original contract work is performed. *Id*. Again the federal decisions under the Miller Act clearly have the effect of significantly limiting potential claims against sureties.

Once again the Supreme Judicial Court in *Peters*, supra, reviewed the long history in Massachusetts concerning the decisions surrounding who may qualify as a "subcontractor" for the purpose of the mechanic's lien statute. The Court, relying on the 1910 decision in *Friedman v. County of Hampden*, 204 Mass. 494, defined a subcontractor as "one who has entered into a contract, express or implied, for the performance of an act with a person who has already contracted for its performance. *Peters* at 867 fn. 9, citing Friedman at 501-502.

On yet another issue, Massachusetts[10] has taken the exact opposite approach and refused

---

[10] Rhode Island in the unpublished Superior Court decision of *Sims Corporation v. Hartford Accident and Indemnity Company*, 1979 Westlaw 195994 (R.I. Super.) indicated that it would look to the Miller Act in determining when a claimant last performed work on the project, however, the issue addressed in *Sims* was not guided by the clear and unambiguous language at issue in this case. Given the Rhode Island Supreme Court’s pronouncements concerning the interpretation of clear and unambiguous statutes and contracts, there would be no need for the Court to refer to the decisions “interpreting” the Miller Act.

to follow the Miller Act precedents. In *Carter v. Com.*, 290 Mass. 97 (1935) a contractor installed some underground piping. *Carter* at 100-101. The contractor had to return to repair the previously installed pipes, which had already been approved by the Owner. *Id*. The contractor was not compensated for the repair work. *Id*. at 101. The Massachusetts Supreme Judicial Court held that the notice period for bringing a claim pursuant to the payment bond statute was extended by the repair work. *Id*. The Supreme Judicial Court went so far as to state that so long as the repair work constituted work under the original contract that the notice period would be extended even "though [the work was] done with the ulterior purpose of saving the lien and postponed until long after the bulk of the work has been completed . . . ." *Id*. (quoting *Peerless Unit Ventilation Co., Inc. v. D'Amore Construction Co.,* 283 Mass. 121, 124.) This is a clear choice of expanding potential claims at the expense of surety liability.

In *Ross v. Planet Insurance Co.*, 361 Mass. 852 (1972) the Supreme Judicial Court once again was called upon to address the issue of determining when a claimant last performed work on a project. The Contractor in *Ross* returned to a project to perform corrective caulking work. *Ross* at 852. The Supreme Judicial Court again held that the performance of corrective work on previously performed contract work acted to extend the notice period under the payment bond statute. *Id*. Once again the Massachusetts Courts have made a clear choice in favor of potential claimants and against surety companies such as USFIC.

USFIC cannot point to any prior decisions in either Massachusetts or Rhode Island where the state courts have held that decisions under the Miller Act **must** be followed when interpreting their respective public project payment bond statutes. The best USFIC can do is to point the this Court to decisions that say that the state courts will look to the Miller Act when interpreting their

statutes. As shown above, the fact that a Court may look to the Miller Act is not determinative of whether Castle is a proper claimant under the payment bonds at issue in this case. This is particularly true in Massachusetts that has demonstrated its willingness to part company with the Miller Act and issue decisions that are specifically and categorically contrary to the interpretations of the Miller Act expressed by the federal courts including the United States Supreme Court.

**5. The stated purposes of the payment bond statutes at issue in this case unequivocally demonstrate that Castle is a proper claimant under the Payment Bonds.**

In both Massachusetts and Rhode Island, the underlying purpose of the payment bond statute is to provide subcontractors and suppliers security to ensure their payment on a public works project. This is so because those vendors are unable to obtain a mechanic's lien against government property as would ordinarily be allowed on a private project. See *Peters*, supra at 866. “[T]he statute [M.G.L. c. 149, section 29] is an outgrowth of the mechanic's lien statutes . . . ‘The object of these statutes is to give those furnishing labor and materials 'security equivalent to the lien which the law creates upon the property of other owners in like cases'". (citing *Burr v. Massachusetts School for Feeble-Minded*, 197 Mass. 357 (1908)). Although there are no reported decisions on this issue in Rhode Island, one Rhode Island Superior Court Judge has considered the issue and found that the payment bonds issued pursuant to R.I.G.L. 37-13-14 act as a replacement for the mechanic's lien that are otherwise unavailable on public projects. See *Sydney Supply Co. v. Industrial National Bank of Rhode Island*, 1980 WL 336017 (R.I. Super.). See also R.I.G.L. 34-28-31.

In this case, Castle is an equipment supplier to South Shore. Castle provided equipment

for use on public construction projects in Massachusetts and Rhode Island. South Shore issued payment bonds on both projects. Had this been a private project there can be no doubt that Castle would be entitled to assert a mechanic's lien in both Massachusetts and Rhode Island because it supplied equipment that was used on both projects. Castle falls squarely within the definition of a claimant under both payment bonds. Castle is certainly a claimant contemplated under the respective state statutes.

**6. The fact that Rosciti may be individually liable to USFIC pursuant to his indemnity obligations owed to USFIC is irrelevant to the obligations arising between Castle and USFIC under the respective payment bonds.**

To escape its obligations under the respective payment bonds, USFIC asserts that Rosciti's potential personal liability pursuant to his indemnity agreement with the bond company somehow shields the surety from liability to Castle. Castle is a separate and distinct legal entity from both South Shore and Rosciti. See *Doe v. Gelineau*, 732 A.2d 43, 44 (1999), *Sunrise Properties, Inc. v. Bacon, Wilson, Ratner, Cohen, Salvage, Fialky & Fitzgerald, P.C.*, 425 Mass. 63, 66 (1997) and *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998). Castle's shareholders are Rosciti, and Clifford. South Shore's shareholders are Rosciti and his cousin Henry. Although there is an overlap in the shareholders of each corporation, they are not identical.

Castle's liabilities to third parties, such as its lenders, also distinguish Castle from South Shore. Clifford is personally liable for approximately $2,000,000.00 in equipment loans extended by Sovereign Bank in favor of Castle. Henry is certainly not liable for Castle's loans or obligations.

This is not situation where one individual, Rosciti, is the only person with a stake in the matter. Castle is a separate entity from Rosciti the individual. Payment by USFIC to Castle is

not the same as payment to Rosciti personally. The mere fact that Rosciti may be liable to USFIC under an indemnity agreement does not limit or eliminate in any way USFIC's liability to Castle.

The Massachusetts Appeals Court has also held that a surety cannot escape liability because it was unaware of its principal's actions. See *John W. Egan Company, Inc. v. Major Construction Management Corporation*, 46 Mass.App.Ct. 643 (1999).[11] The dispute in *Egan* centered on whether the surety was liable for interest in the same manner and amount as its principal. *Egan* at 645. The surety asserted that it was not liable as the general contractor principal was for interest from the date of default. Instead, the surety argued that it was only on the hook for interest from the date it first received notice of non-payment from the subcontractor. *Id*.

The Appeals Court, in finding for the subcontractor, held that absent a provision in the bond to the contrary, "it is up to the (compensated) surety to keep itself informed of any defaults on the part of the principal; it is not the task of the creditor to inform and give notice to the surety." *Id*. The Court went on to state, quoting *Watertown Fire Ins. Co. v. Simmons*, 131 Mass. 85, 86 (1881):

> [T]he creditor owes no duty of active diligence to take care of the interest of the surety. It is the business of the surety to see that his principal performs the duty which he has guaranteed, and not that of the creditor. [Citing case.] The surety is bound to inquire for himself; and cannot complain that the creditor does not notify him of the state of the accounts between him and his agent [read 'principal' in the present context], for whom the surety is liable."
>
> *John W. Egan Company, Inc.* 46 Mass.App.Ct. at 645-646.

11 This is another case that is indicative of the Massachusetts Court's unwillingness to compromise a claimant's action against a surety.

The Court went on to hold that the "obligation of the surety under a payment bond corresponds to that of the principal." *Id*. at 646.

It is undisputed that USFIC is a compensated surety since it did not provide the payment bonds without consideration. It was up to USFIC to ensure that South Shore was paying its bills. It was not up to Castle to notify USFIC earlier than it did that it had not been paid by South Shore.

**7. Other Federal Courts that have addressed the issue presented in this case have held that Castle would be a proper claimant under the payment bonds.**

USFIC is not the first surety company who has tried to avoid its state law bond obligations by trying to have a Federal Court interpret state law in accordance with the Miller Act. The United States District Court for the Western District of New York had to address this very same issue in the case of *Cleveland Wrecking Co. v. Nova Casualty Co*., 2001 WL 1823604 (W.D.N.Y.). Cedar Wrecking & Salvage, Inc. ("Cedar") was a general contractor on a public project located in the City of Elmira. *Id*. As part of its obligations, Cedar as principal and Nova Casualty as surety issued a labor and materials payment bond. *Id*. Cedar contracted with Cleveland for the performance of work on the Project. *Id*. Cleveland performed the work and did not receive payment from Cedar. *Id*. Cleveland brought a payment bond action against Nova seeking payment for the work it performed. *Id.* The language in the payment bond is essentially the same as in the Rhode Island payment bond at issue in this case. *Id*.

Nova, seeking to avoid liability under the payment bond, claimed that Cleveland was not a proper claimant because Cleveland and Cedar were "related entities". *Id.* Nova pointed to the fact that Cleveland's project manager and another Cleveland employee managed the entire

project on behalf of Cedar, the general contractor. *Id*. The Court rejected Nova's claims on the grounds that Nova could provide no authority under state law that barred Cleveland's payment bond claims. *Id*. The Court went on to state that the payment bond's definition of claimant placed no restriction prohibiting a "related entity" from making a claim on the payment bond. *Id*. The Court stated expressly that the Miller Act did not apply to the state law claims at issue in this case. *Id*.

The United States District Court for the Northern District of California also addressed this same issue in *National Union Fire Insurance Company of Pittsburgh, Pennsylvania v. Electric Transit, Inc.*, 2007 WL 735766 (N.D.Cal. 2007). The *National Union* court specifically adopted the *Cleveland Wrecking* decision in denying National Union's Motion for Summary Judgment. *Id*. Of particular import to the case at bar, is the fact that the claimant in *National Union* was a part owner of the payment bond principal and was also an indemnitor under the indemnity agreement with the surety. *Id*. Notwithstanding the relationship between the claimant and the principal, a federal court once again refused to apply the restrictive Miller Act holdings to state law payment bond claims.

**8. The facts and circumstances of Castle's involvement with South Shore demonstrate that Castle is a proper claimant under the two payment bond.**

In its Memorandum USFIC cities seven (7) federal court decisions under the Miller Act to support its contention that Castle is not a proper claimant under the two payment bonds at issue in this case. *USFIC Memorandum pg. 9-10*. These cases stand for the proposition that "partners", "joint ventures" and "insiders" of the payment bond principal cannot make Miller Act bond claims. *Id*. Four of the cases *U.S. ex rel Briggs v. Grubb*, 358 F. zd 508 (9th Cir 1966),

*Theobald-Jansen Elec. Co. v. P.H. Meyers*, 77 F. 2d 27 (10th Cir 1935), *Nat'l State Bank of Newark, v. Teminal Const. Co.*, 217 F. Supp. 341 (D. N. J. 1963) and *U.S. ex rel Walker v. U.S.Fid. & Guar. Co.*, 4 F. Supp. 854 ( D. Wyo. 1933) all denied the Miller Act bond claims because the claimants were found to be joint ventures with the bond principal. USFIC presents no evidence that Castle was a joint venturer with South Shore on either the New Bedford or Burrillville projects. Accordingly, these cases do not support USFIC's assertions in this case.

Two other cases, *Hardaway v. Nat'l Sur. Co.*, 211 U.S. 552 (1909) and *U.S. ex rel Johnson Pugh Mech., Inc. v. Landmark Const. Corp.*, 318 F. Supp.2d 1057 (D. Colo. 2004) denied the Miller Act bond claims because the claimant was found not to have provided any labor and materials on the covered projects. The claimant in *Hardaway* only provided financing and superintendence. *Hardaway* at 559. The claimant in *Johnson Pugh* was a corporation that was dissolved prior to the bonds being issued. Because both claimants in those cases were found to have not provided labor and/or materials for the covered projects, the courts made the not so giant leap that they could not make a claim on the Miller Act bonds. Again, USFIC has presented no evidence and in fact concedes that Castle rented equipment to South Shore that was used on both projects.

USFIC also cites the case of *American Casualty Company of Reading, Pennsylvania v. Assiran*, 289 F. Supp. 645 (D.C. Mass. 1968). The *Assiran* Court also denied coverage to a claimant on a joint venture analysis because the bond principal and the claimant were controlled by a single person. *Assiran* at 646.

The court in *Johnson Pugh* also analyzed the claims under an alter ego analysis. *Johnson Pugh* at 1072-1075. The Court made detailed findings of fact and concluded that the claimant

and the principal on the Miller Act bond were alter egos of one another. *Id*. at 1075. The facts found by the Court substantiating the alter ego finding included stock ownership of both companies in one individual, single officers for both corporations, "parent" financing "subsidiary", claimant under-capitalized, "parent" pays for salaries, losses or expenses of "subsidiary", "subsidiary" had almost no other business other than with the "parent" and corporation did not follow corporate formalities. *Id* at 1074-1075.

The foregoing facts that were controlling in the *Johnson Pugh* holding are not present in this case. The evidence here unequivocally demonstrates that Castle was a separate and distinct corporate entity from South Shore. Castle files separate tax returns from South Shore and it files Annual reports with the Rhode Island Secretary of State. (Rosciti Aff. Para 29) Castle's officers are elected, (Clifford and Rosciti) and are different than South Shore's officers who are Rosciti and Henry. (Clifford Aff., ¶ 3 & 4) and (Rosciti Aff. ¶ 6). Castle's shareholders (Rosciti 70% and Clifford 30%) are different than South Shore's shareholders (Rosciti and Henry). (Clifford aff. ¶. 2) and (Rosciti aff. ¶ 2). Clifford is not related to Rosciti and at the time Castle was formed he was working for another equipment suppler, T Quip. Clifford took a tremendous pay cut to start the business. (Clifford aff. ¶ 15 & 16) and Rosciti aff. ¶ 1)

The two projects at issue in this case, New Bedford and Burrillville, make up a very small percentage of Castle's overall business. In 2005 Castle had gross receipts of $1,717,814.00 and in 2006 Castle had gross receipts of $ 4,144,525.00. (Clifford aff. ¶. 19 & 20) The New Bedford and Burrillville claims only represent 5.6% of Castle's gross receipts for 2005 and 2006. (Clifford aff. ¶. 21). Moreover, although South Shore has ceased operating as a result of being petitioned into state court receivership in 2006, Castle continues to do business and remains an

ongoing concern.

Although Rosciti may make the major business decisions by virtue of his stock interest in Castle, Clifford has separate and distinct job duties that include being primarily responsible for Castles sales efforts. (Clifford aff. ¶ 10). Rosciti has not received any salary from Castle and Castle employs its own employees for equipment repair and book keeping. (Clifford aff. ¶ 14 & 17). Finally, Castle has entered into various financing arrangements for equipment purchases and both Clifford and Rosciti are personal guarantors of the multi million dollar equipment loans. (Clifford aff. ¶ 7, 8, & 9).

USFIC has not produced any evidence that Castle supplied equipment to South Shore as part of a scheme to fraudulently submit a claim on the payment bond. The uncontroverted evidence before the Court is that Castle operated and continues to operate as a legitimate company separate and apart from South Shore. USFIC has also not presented any evidence that South Shore improperly applied payments or that Rosciti gained and/or profited in any manner on account of South Shore not paying Castle. Castle is no different than the sixteen (16) other contractors who were required to make payment bond claims on the Burrillville and New Bedford projects because South Shore had not paid its bills. Contrary to USFIC's protestations in this case, had Rosciti wanted to exert such control and influence over Castle's business so as to ensure payment, it would have been much easier to pay Castle from money that South Shore actually controlled rather that to rely upon a payment bond claim. Additionally, had South Shore preferred Castle by paying it at the expense of other subcontractors, such payments would have been disallowed as preferential payments. Moreover, USFIC's overall exposure would have been greater because there would have been more claims submitted by other subcontractors to

which USFIC would have no “related entity” argument to make to deny those claims.

Fraud is of no concern in this case. UFIC is simply attempting to limits its losses by applying inapplicable Miller Act holdings to state law payment bond claims. Castle was treated like other subcontractors on the projects. It supplied equipment to South Shore. It was not paid by South Shore and it is currently owed an outstanding balance by the principal for equipment provided on the two (2) projects. The evidence demonstrates that Castle is not an alter ego or joint ventures of or with South Shore and that it is a proper claimant under both payment bonds.

**III. Castle is entitled to Summary Judgment on its Payment Bond claims.**

As discussed above, Castle is entitled to summary judgment on the issue of whether it is a proper claimant on the two (2) payment bonds in this case. Once that issue is resolved in Castle’s favor, the only issue that remains is the issue of damages. Castle is owed $233,396.38 on the New Bedford project and $97,905.00 on the Burrillville project. In its motion for summary judgment, the only issue raised by USFIC is whether or not Castle is a proper claimant on the payment bonds. Neither in its motion for summary judgment nor during the course of these discovery proceedings has USFIC disputed the outstanding balances claimed by Castle.

On or about August 16, 2007, Castle propounded interrogatories to USFIC relative to its defense to Castle’s claims. (DeMello aff. ¶ 8). On or about February 11, 2008 Castle propounded interrogatories to USFIC relative to its defense to Castle’s claims on the Burrillville project. (DeMello aff. ¶ 9). On or about October 15, 2007, U.S Fire answered the New Bedford interrogatories. (DeMello aff. ¶ 10). USFIC has not answered the Burrillville interrogatories. (DeMello aff. ¶ 11).

USFIC’s sole basis for denying Castle’s claims is pursuant to its “related entity”

argument. (DeMello Aff. Para 10, Exhibit "B"). USFIC has relied upon a December 22, 2006 denial letter that contains only one substantive paragraph that addresses it basis for denying both of Castle's claims. The letter states the following:

> Based on the information in USFIC's possession, including the Proof of Claim forms executed and submitted on behalf of Castle, as well as information regarding the ownership breakdown and organizational structure of Castle, it appears that Castle is majority-owned and controlled by the same individual who owns and controls South Shore, the principal of the above-referenced bonds. Therefore, based on the common ownership and control of Castle and South Shore, USFIC denies the claims asserted by Castle under the above-referenced bonds. (DeMello Aff., para. 10, Exhibit "B").

Other than a general denial in its answers to Castle's complaints, at no time either in its answers to interrogatories or in its written denial of Castle's claims has USFIC denied that Castle has supplied the equipment to South Shore or that Plaintiff is owed the sum of $331,301.38 for equipment that South Shore had used on the New Bedford and Burrillville projects as alleged in Castle's complaints. USFIC has exclusively relied on the Miller Act holdings for its defense of Castle's claims. Once this argument is lost, the USFIC is without any other valid defenses to Castle's payment bond claims.

To this end, Castle is entitled to summary judgment on its two payment bond claims in the amount of $ 331,301.38 together with interest, costs and attorney's fees.

**Conclusion**

Castle is a subcontractor to South Shore on two public construction projects: (i) the New Bedford project located in New Bedford, Massachusetts; and (ii) the Burrillville project located in Burriville, Rhode Island. Castle supplied various pieces of equipment for South Shore to perform its work on the projects. South Shore has not paid Castle for the equipment that it

provided.

South Shore as principal and USFIC as surety issued payment bonds on each project pursuant to the Massachusetts and Rhode Island public project payment bond statutes. According to the clear and plain language of the payment bond statutes, M.G.L. c. 149, section 29 and R.I.G.L. c. 34-13-14 and 34-12-1 et seq., Castle is an appropriate and proper claimant under both bonds. Neither project is governed by the Miller Act which only applies to Federal government projects. USFIC cannot point to any state law precedent that would indicate that either Massachusetts or Rhode Island would adopt the Miller Act's prohibition against "related entity" payment bond claims. To the contrary, Castle has demonstrated that both Massachusetts and Rhode Island would follow a liberal and broad interpretation of their respective statutes that favors ensuring payment to contractors furnishing labor, materials and equipment on public projects over the protection of compensated sureties. Castle is a proper claimant on both payment bonds and it is entitled to payment from USFIC on both projects together with costs, attorney’s fees and interest.

Respectfully submitted,
Plaintiff Castle Equipment
By and through his attorneys,

______________/s/___________________________

Lepizzera & Laprocina Counsellors at Law, Ltd.
Michael Lepizzera #4995
Christian Potter # 5359
117 Metro Center Blvd. Suite 2001
Warwick, Rhode Island 02886
Tel: (401) 739-7397
Fax: (401) 384-6950
Email: mlepizzera@leplap.com
Email: cpotter@leplap.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2008 this document has been filed electronically with the Court, is available for viewing and down loading from the ECF system, and has been served upon registered counsel through the ECF system and upon the following counsel by first class mail, postage prepaid:

Christopher Kunkel
McElroy Deutsch Mulvaney & Carpenter LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962

Adam R. Schwartz
McElroy, Deutsch, Mulvaney & Carpenter, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962

__/s/______________________
Michael Lepizzera