**United States District Court**
**for the District of Rhode Island**

Castle Equipment Company,
Plaintiff

v. Civil Action No. 07-98S
(Consolidated)

United States Fire Insurance Company,
Defendant/Third Party Plaintiff

v.

Anthony F. Rosciti, Jr.,
Third Party Defendant

**PLAINTIFF CASTLE EQUIPMENT COMPANY'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS OPPOSITION TO U.S. FIRE'S MOTION FOR SUMMARY JUDGMENT AND ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

**A. Castle Equipment Company**

1. Plaintiff, Castle Equipment Company ("Castle"), is a Rhode Island corporation formed in 2004 by Anthony Rosciti, Jr. ("Rosciti") and Daniel Clifford ("Clifford"). (Clifford aff. ¶ 1).

2. At all relevant times hereto, Castle has and continues to be owned by Rosciti and Clifford with Rosciti owning seventy percent (70%) of the company and Clifford owning the remaining thirty percent (30%). (Clifford aff. ¶ 2)

3. Castle owns a large inventory of heavy construction equipment which it in turn rents and sells to contractors in the Rhode Island/Massachusetts area. (Clifford aff. ¶ 5).

4. Castle is not a manufacturer and it therefore must necessarily purchase its equipment inventory from another source (in many cases Terex). (Clifford aff. ¶ 6).

5. Castles finances its own equipment purchases either directly through its equipment supplier or by utilizing an independent lender. (Clifford aff. ¶ 6).

6. At the time Castle was supplying equipment to South Shore Utility Company, Inc. on the two (2) projects in question, Castle had outstanding loans with both Terex and G.E. Capital to the tune of approximately two million five hundred thousand dollars ($2,500,00.00) (Clifford aff. ¶ 7).

7. Castle has since refinanced these loans with Sovereign Bank and the outstanding balance on said loans is approximately two million dollars ($2,000,000.00). (Clifford aff. ¶ 8).

8. Both Rosciti and Clifford are personal guarantors of the outstanding Castle-Sovereign Bank loans. (Clifford aff. ¶ 9).

9. Both Rosiciti and Clifford participate in Castle's management, however, by virtue of his greater ownership interest, Rosciti makes the majority of the business decisions. (Clifford aff. ¶ 10).

10. Clifford is responsible for the day to day sales efforts on behalf of Castle. (Clifford aff. ¶ 11). Clifford's primary role is to promote Castle's business operations by marketing Castle to construction companies and other prospective customers. (Clifford aff. ¶ 12).

11. Clifford spends the majority of his time outside of the company's offices visiting customers and promoting the company. (Clifford aff. ¶ 13).

12. Besides employing Clifford, Castle employs other individuals who service the construction equipment and maintain the company's accounts payable and receivable records. (Clifford aff. ¶ 14)

13. Immediately before Clifford and Rosciti formed Castle, Clifford was employed by another equipment rental company (T-Quip). (Clifford aff. ¶ 15).

14. Clifford took a tremendous pay cut to start Castle with Rosciti. (Clifford aff. ¶ 16).

15. Castle has always operated as a separate and legitimate business. (Clifford aff. ¶ 17)

16. Castle rents equipment to several other non-related construction companies and is actively seeking to increase its business. (Clifford aff. ¶ 18).

17. Castle files its own tax returns and it files annual reports with the Secretary of State's office. (Rosciti aff. ¶ 29)

18. Although Rosciti owns the majority interest in Castle, he was not paid a salary from the plaintiff company. (Clifford aff. ¶ 17).

**B. South Shore Utility Contractors, Inc.**

19. South Shore Utility Contractors, Inc. ("South Shore") is a Rhode Island corporation formed in 2001. (Rosciti aff. ¶ 6).

20. The shareholders are Rosciti and his cousin Henry Rosciti ("Henry") who each own fifty

percent (50%) of this company. (Rosciti aff. ¶ 6).

21. South Shore generally performed utility contracting work in the greater New England area. (Rosciti aff. ¶ 7).

**C. The New Bedford Project a/k/a the Earle Street Sewer Project.**

22. The first project is a public works sewer project located in New Bedford Massachusetts. (Rosciti aff. ¶ 8).

23. The City of New Bedford in its capacity as the owner entered into a contract with South Shore as the general contractor for sewer line work. (Rosciti aff. ¶ 8).

24. The Project is commonly referred to as the Earle Street Sewer Project. (Rosciti aff. ¶ 9).

25. The gross amount of the contract between New Bedford and South Shore exceeded three million dollars ($3,000,000.00). (Rosciti aff. ¶ 10).

**1. The New Bedford payment bond.**

26. In order to comply with the mandate of M.G.L. c. 149, section 29, South Shore procured Payment Bond #6102446391 from Defendant United States Fire Insurance Company (USFIC) on or about January 1, 2005 to bond the New Bedford Project. (Rosciti aff. ¶ 11)

27. The payment bond in the amount of three million three hundred sixty two thousand five hundred eighty dollars and 96/100 ($3,362,580.96) issued in favor of the City of New Bedford (owner) to ensure payment by South Shore to any subcontractors and suppliers working on the project. (Rosciti aff. ¶ 12).

28. The Payment Bond was signed by Beryl A. Finn, attorney in fact for USFIC and Rosciti in his capacity as President of South Shore. (Rosciti aff. ¶ 14).

**D. The Burriville Project a/k/a the Glendale Village Project.**

29. The second project at issue is also a public works sewer project. (Rosciti aff. ¶ 16).

30. This project was located in Burrillville, Rhode Island. (Rosciti aff. ¶ 16).

31. The Town of Burrillville in its capacity as owner entered into a contract with South Shore as general contractor for certain sewer line work. (Rosciti aff. ¶ 16).

32. The Project is sometimes referred to as the Glendale Village Project. (Rosciti aff. ¶ 17).

33. The gross amount of the contract between Burrillville and South Shore exceeded two

million dollars ($2,000,000.00). (Rosciti aff. ¶ 18).

**1. The Burriville payment bond.**

34. In order to commence work on the Burriville project and in compliance with Rhode Island law, South Shore procured a labor and materials bond from USFIC in the principal amount of two million twenty six thousand three hundred fifty two dollars and 50/100 ($2,026,352.50) again to ensure payment by South Shore of its subcontractors, suppliers and vendors on the project. (Rosciti aff. ¶ 19).

35. This payment bond was issued on or about March 1, 2005. (Rosciti aff. ¶ 19).

36. Like the New Bedford payment bond, the bond for the Burriville project was signed by Beryl A. Finn, Attorney in Fact for USFIC and Rosciti on behalf of South Shore. (Rosciti aff. ¶ 21)

**E. South Shore rents equipment from Castle to perform its work on the New Bedford and the Burriville projects.**

37. The work South Shore was required to perform on both public works projects required the use of heavy construction equipment. (Clifford aff. ¶ 22).

38. South Shore rented this equipment from Castle over the course of 2005 and early 2006. (Rosciti aff. ¶ 28).

39. Castle is owed $233,396.38 for the rental equipment it supplied South Shore on the New Bedford project. (Rosciti aff. ¶ 28).

40. With respect to the Burrillville project, South Shore has an outstanding balance with Castle in the amount of $97,905.00. (Rosciti aff. ¶ 28).

41. The amounts due for both projects are based upon the fair market rates for the equipment that was rented. (Rosciti aff. ¶ 28)

F. **South Shore's financial difficulties causes it to be placed into state court receivership.**

42. During the course of performing the Massachusetts and Rhode Island projects which are at dispute in this case, South Shore found itself in financial difficulty. (Rosciti aff. ¶ 23).

43. The financial difficulty was caused in large part for non-payment of work performed by South Shore on a project located in Connecticut. South Shore was owed in excess of one million

and no/100 ($1,000,000.00) dollars for work performed on this Connecticut project. (Rosciti aff. ¶ 24).

44. The lack of payment on the Connecticut project caused financial hardship for South Shore. (Rosciti aff. ¶ 23).

45. It resulted in serious cash flow shortages for the company which in turn caused South Shore to be unable to meet its financial obligations on the New Bedford and Burrillville projects including payments to a number of its subcontractors and suppliers. (Rosciti aff. ¶ 25).

46. As illustrated above, one of the unpaid vendors included Castle. (Rosciti aff. ¶ 28).

47. A review of USFIC's records maintained by Beacon Consulting, Group, Inc., a construction consultant hired by USFIC, indicate that USFIC received over $650,000.00 in payment bond claims arising out of the New Bedford and Burriville projects exclusive of the sums due Castle. (DeMello aff. ¶ 5)

48. Unable to meet its financial obligations, South Shore was ultimately petitioned into receivership in early 2006. (Rosciti aff. ¶ 27).

49. It was the intent of South Shore to pay its subcontractors including Castle for work, services and equipment provided on these two (2) projects but the company's dire financial condition and the receivership filing preempted South Shore from making any further payments. (Rosciti aff. ¶ 33).

**G. USFIC denies Castle's bond claims on both projects.**

50. Like South Shore's other subcontractors who failed to receive payment on the New Bedford and Burriville projects, Castle filed a bond claim with USFIC against the respective payment bonds. (Rosciti aff. ¶ 30)

51. USFIC denied Castle's claims on the grounds that Castle and South Shore were related entities. (Rosciti aff. ¶ 31).

52. Castle originally brought two separate state court actions – one action in the Commonwealth of Massachusetts Superior Court and the other in the State of Rhode Island Superior Court seeking payment pursuant to the two (2) payment bonds issued by USFIC. (Rosciti aff. ¶ 36).

53. USFIC subsequently removed those two cases to Federal court. (Rosiciti aff. ¶ 37)

54. The cases have since been consolidated in this Court. (Rosciti aff. ¶ 37).

Respectfully submitted,
Plaintiff Castle Equipment
By and through his attorneys,

/s/ Christian Potter______________________
Lepizzera & Laprocina Counsellors at Law, Ltd.
Christian Potter # 5359
117 Metro Center Blvd. Suite 2001
Warwick, Rhode Island 02886
Tel: (401) 739-7397
Fax: (401) 384-6950
Email: cpotter@leplap.com

/s/ Michael Lepizzera___________________
Lepizzera & Laprocina Counsellors at Law, Ltd.
Michael Lepizzera #4995
117 Metro Center Blvd. Suite 2001
Warwick, Rhode Island 02886
Tel: (401) 739-7397
Fax: (401) 384-6950
Email: mlepizzera@leplap.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 23, 2008 this document has been filed electronically with the Court, is available for viewing and down loading from the ECF system, and has been served upon registered counsel through the ECF system and upon the following counsel by first class mail, postage prepaid:

Christopher Kunkel
McElroy Deutsch Mulvaney & Carpenter LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962

Adam R. Schwartz
McElroy, Deutsch, Mulvaney & Carpenter, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962

__/s/ Michael Lepizzera___________________