# Construction Payment Bond

Bond #6102446409

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

CONTRACTOR (Name and Address):
South Shore Utility Contractors, Inc.
44 Marie Avenue, P.O. Box 19610
Johnston, RI 02919

SURETY (Name and Principal Place of Business):
United States Fire Insurance CO.
60 State St.
Boston, MA 02109

OWNER (Name and Address):
City of New Bedford
Dept. of Public Infrastructure
1105 Shawmut Avenue
New Bedford, MA 02470

CONSTRUCTION CONTRACT
Date: 1/1/05
Amount: One Million Eight Hundred and Eight Thousand One Hundred and Thirty Seven Dollars and Ninety-Five Cents ($1,808,137.95)
Description (Name and Location):

Project #CWSRF 1726, West End Sewer Separation - Phase II and III, #524

BOND
Date (Not earlier than Construction Contract Date): 1/1/05
Amount: One Million Eight Hundred Eight Thousand One Hundred Thirty Seven and 95/100 ($1,808,137.95)
Modifications to this Bond Form:

Attached Terrorism Rider

CONTRACTOR AS PRINCIPAL (Corp. Seal)
Company: South Shore Utility Contractors, Inc.

Signature: [signature]
Name and Title: Anthony Rosciti, Jr.
President

SURETY (Corp. Seal)
Company: United States Fire Insurance Co.

Signature: Beryl A. Finn
Name and Title: Beryl A. Finn
Attorney-in-fact

CONTRACTOR AS PRINCIPAL
Company: (Corp. Seal)

Signature:
Name and Title:

SURETY
Company: (Corp. Seal)

Signature:
Name and Title:

EJCDC No. 1910-28B (1984 Edition)
Prepared through the joint efforts of the Surety Association of America, Engineers' Joint Contract Documents Committee, The Associated General Contractors of America, American Institute of Architects, American Subcontractors Association and the Associated Specialty Contractors.

1. The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference.

2. With respect to the Owner, this obligation shall be null and void if the Contractor:

2.1. Promptly makes payment, directly or indirectly, for all sums due Claimants, and

2.2. Defends, indemnifies and holds harmless the Owner from all claims, demands, liens or suits by any person or entity who furnished labor, materials or equipment for use in the performance of the Construction Contract, provided the Owner has promptly notified the Contractor and the Surety (at the address described in Paragraph 12) of any claims, demands, liens or suits and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety, and provided there is no Owner Default.

3. With respect to Claimants, this obligation shall be null and void if the Contractor promptly makes payment, directly or indirectly, for all sums due.

4. The Surety shall have no obligation to Claimants under this Bond until:

4.1. Claimants who are employed by or have a direct contract with the Contractor have given notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and, with substantial accuracy, the amount of the claim.

4.2. Claimants who do not have a direct contract with the Contractor:

1. Have furnished written notice to the Contractor and sent a copy, or notice thereof, to the Owner, within 90 days after having last performed labor or last furnished materials or equipment included in the claim stating, with substantial accuracy, the amount of the claim and the name of the party to whom the materials were furnished or supplied or for whom the labor was done or performed; and
2. Have either received a rejection in whole or in part from the Contractor, or not received within 30 days of furnishing the above notice any communication from the Contractor by which the Contractor has indicated the claim will be paid directly or indirectly; and
3. Not having been paid within the above 30 days, have sent a written notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and enclosing a copy of the previous written notice furnished to the Contractor.

5. If a notice required by Paragraph 4 is given by the Owner to the Contractor or to the Surety, that is sufficient compliance.

6. When the Claimant has satisfied the conditions of Paragraph 4, the Surety shall promptly and at the Surety's expense take the following actions:

6.1. Send an answer to the Claimant, with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed.

6.2. Pay or arrange for payment of any undisputed amounts.

7. The Surety's total obligation shall not exceed the amount of this Bond, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

8. Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any Construction Performance Bon[d]. By the Contractor furnishing and the Owner accepting this Bond, th[ey] agree that all funds earned by the Contractor in the performance of th[e] Construction Contract are dedicated to satisfy obligations of the Co[n]tractor and the Surety under this Bond, subject to the Owner's priorit[y] to use the funds for the completion of the work.

9. The Surety shall not be liable to the Owner, Claimants or others f[or] obligations of the Contractor that are unrelated to the Construction Con[t]ract. The Owner shall not be liable for payment of any costs or expense[s] of any Claimant under this Bond, and shall have under this Bond n[o] obligations to make payments to, give notices on behalf of, or otherwis[e] have obligations to Claimants under this Bond.

10. The Surety hereby waives notice of any change, including changes o[f] time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

11. No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which the work or part of the work is located or after the expiration of one year from the date (1) on which the Claimant gave the notice required by Subparagraph 4.1 or Clause 4.2 (iii), or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

12. Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page. Actual receipt of notice by Surety, the Owner or the Contractor, however accomplished, shall be sufficient compliance as of the date received at the address shown on the signature page.

13. When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is, that this Bond shall be construed as a statutory bond and not as a common law bond.

14. Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor shall promptly furnish a copy of this Bond or shall permit a copy to be made.

15. DEFINITIONS

15.1. Claimant: An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Contract. The intent of this Bond shall be to include without limitation in the terms "labor materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

15.2. Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

15.3. Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Contract or to perform and complete or comply with the other terms thereof

(FOR INFORMATION ONLY—Name, Address and Telephone)

AGENT or BROKER: OWNER'S REPRESENTATIVE (Architect, Engineer or other party):

# Construction Performance Bond

Bond #6102446409

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

CONTRACTOR (Name and Address):
South Shore Utility Contractors, Inc.
44 Marie Avenue, P.O. Box 19610
Johnston, RI 02919

SURETY (Name and Principal Place of Business):
United States Fire Insurance Co.
60 State St.
Boston, MA 02109

OWNER (Name and Address):
City of New Bedford
Dept. of Public Infrastructure
1105 Shawmut Avenue
New Bedford, MA 02470

CONSTRUCTION CONTRACT
Date: 1/1/05
Amount: One Million Eight Hundred and Eight Thousand One Hundred and Thirty Seven Dollars and Ninety-Five Cents (1,808,137.95)
Description (Name and Location):

Project #CWSRF 1726, West End Sewer Separation - Phase II and III, #524

BOND
Date (Not earlier than Construction Contract Date): 1/1/05
Amount: Same as above.
Modifications to this Bond Form:

Attached Terrorism Rider

CONTRACTOR AS PRINCIPAL (Corp. Seal)
Company: South Shore Utility Contractors, Inc.

Signature: [signature]
Name and Title: Anthony Rosciti, Jr.
President

SURETY (Corp. Seal)
Company: United States Fire Insurance Co.

Signature: Beryl A. Finn
Name and Title: Beryl A. Finn
Attorney-in-fact

CONTRACTOR AS PRINCIPAL
Company: (Corp. Seal)

Signature: ______
Name and Title:

SURETY
Company: (Corp. Seal)

Signature: ______
Name and Title:

1. The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

2. If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except to participate in conferences as provided in Subparagraph 3.1.

3. If there is no Owner Default, the Surety's obligation under this Bond shall arise after:

3.1. The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below, that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default; and

3.2. The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1; and

3.3. The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

4. When the Owner has satisfied the conditions of Paragraph 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

4.1. Arrange for the Contractor, with consent of the Owner, to perform and complete the Construction Contract; or

4.2. Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; or

4.3. Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and the contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Paragraph 6 in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default; or

4.4. Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

1. After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, tender payment therefor to the Owner; or

2. Deny liability in whole or in part and notify the Owner citing reasons therefor.

5. If the Surety does not proceed as provided in Paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond fifteen days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Subparagraph 4.4, and the Owner refuses the payment tendered or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

6. After the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Subparagraph 4.1, 4.2, or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:

6.1. The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

6.2. Additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4; and

6.3. Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

7. The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators, or successors.

8. The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

9. Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

10. Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page.

11. When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

12. Definitions.

12.1. Balance of the Contract Price: The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

12.2. Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

12.3. Contractor Default: Failure of the Contractor, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Construction Contract.

12.4. Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

(FOR INFORMATION ONLY — Name, Address and Telephone)
AGENT or BROKER:
OWNER'S REPRESENTATIVE (Architect, Engineer or other party):

POLICY NUMBER: 6102446409

IL 09 85 01 03

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002

SCHEDULE*

| |
|---|
| Terrorism Premium (Certified Acts) $ 0 |
| Additional information, if any, concerning the terrorism premium: |
| * Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations. |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.



© ISO Properties, Inc., 2003

# POWER OF ATTORNEY
## UNITED STATES FIRE INSURANCE COMPANY
## PRINCIPAL OFFICE, WILMINGTON, DELAWARE

224646

KNOW ALL MEN BY THESE PRESENTS: That the UNITED STATES FIRE INSURANCE COMPANY a Corporation duly organized and existing under the laws of the State of Delaware, and having its administrative offices in the Township of Morris, New Jersey, has made, constituted and appointed, and does by these presents make, constitute and appoint L. Robert DeSanctis, Gregory D. Juwa, James J. Axon, Michael F. Carney, Wilder Parks, Jr., Michael T. Gilbert, Adam W. DeSanctis, Christine B. Dean, Bryan F. Juwa, Beryl A. Finn, and David A. Boutiette, of Woburn, Massachusetts, each

its true and lawful Agent(s) and Attorney(s)-in-Fact, with full power and authority hereby conferred in its name, place and stead, to execute, seal, acknowledge and deliver: Any and all bonds and undertakings-----------------------

and to bind the Corporation thereby as fully and to the same extent as if such bonds had been duly executed and acknowledged by the regularly elected officers of the Corporation at its offices in Morris Township, New Jersey, in their own proper persons.

This Power of Attorney limits the act of those named therein to the bonds and undertakings specifically named therein, and they have no authority to bind the Company except in the manner and to the extent therein stated.

This Power of Attorney revokes all previous powers issued in behalf of the attorney(s)-in-fact named above.

IN WITNESS WHEREOF the United States Fire Insurance Company has caused these presents to be signed and attested by its appropriate officers and its corporate seal hereunto affixed this 23rd day of September, 2004.

UNITED STATES FIRE INSURANCE COMPANY

Attest: [signature]

Assistant Secretary
David Pesce

[signature]

Senior Vice President
Peter J. Daly

STATE OF NEW JERSEY)
ss.:
COUNTY OF MORRIS )

On this 23rd day of September, 2004, before the subscriber, a duly qualified Notary Public of the State of New Jersey, came the above-mentioned Vice President and Assistant Secretary of United States Fire Insurance Company, to me personally known to be the officers described in, and who executed the preceding instrument, and they acknowledged the execution of the same, and being by me duly sworn, deposed and said, that they are the officers of said Company aforesaid, and that the seal affixed to the preceding instrument is the Corporate Seal of said Company, and the said Corporate Seal and their signatures as officers were duly affixed and subscribed to the said instrument by the authority and direction of the said Company.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my seal at the Township of Morris, the day and year first above written.

(Signed)
(Seal)

CATHERINE A. SINCAVAGE NOTARY PUBLIC NEW JERSEY

[signature]
Notary Public

Catherine A Sincavage
Notary Public of New Jersey
My Commission Expires July 12, 2009