**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| CASTLE EQUIPMENT COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES FIRE INSURANCE COMPANY,<br><br>Defendant/Third Party Plaintiff.<br><br>v.<br><br>ANTHONY F. ROSCITI, JR.,<br><br>Third Party Defendant. | Civil Action No. 07-98-S-DLM<br>(consolidated with 08-96S)<br><br>**UNITED STATES FIRE INSURANCE COMPANY'S RESPONSE TO CASTLE EQUIPMENT COMPANY'S STATEMENT OF UNDISPUTED FACTS** |

Defendant/Third-Party Plaintiff, United States Fire Insurance Company ("U.S. Fire"), in the above-entitled action and pursuant to Fed. R. Civ. P. 56 and LR Cv 56(a)(2) submits this response to Castle Equipment Company's ("Castle") Statement of Undisputed Facts..

**A. <u>CASTLE EQUIPMENT COMPANY</u>**

1. Admit.

2. Admit.

3. Admit only that Clifford testified to a list of equipment owned by Castle.

4. Admit only that Castle is not a manufacturer. Deny that Castle had to purchase all of its equipment because Clifford testified that Castle would rent equipment from South Shore and then re-rent the equipment to its customers. *See* Kunkel Aff. ¶ 6, Ex. D at 40:21-23; 53:2-7.

5. Denied. It addition to financing equipment Clifford testified that Castle would rent equipment from South Shore and then re-rent the equipment to its customers. *Id.*

6. Admit only that Clifford testified that Castle had loans with Terex and G.E. Capital.

7. Admit only that Clifford and Rosciti testified that Castle had loans with Terex and G.E. Capital. Neither Clifford nor Rosciti testified to a loan with Sovereign Bank.

8. Admit only that Clifford and Rosciti testified that Castle had loans with Terex and G.E. Capital. Neither Clifford nor Rosciti testified to a loan with Sovereign Bank.

9. Denied. As the President, Treasurer and majority-owner of Castle, Rosciti testified that he controlled the business operations of Castle and headed the business from an operations perspective. *See* Schwartz Cert. ¶ 4, Ex. B at 4-5; *see also* Schwartz Cert. ¶ 5, Ex. C. at 60:21-23.

10. Admit.

11. Admit.

11. Admit only that Clifford testified to meeting with customers outside of Castle's office.

12. Admit.

13. Admit.

14. U.S. Fire is without sufficient knowledge to either admit or deny.

15. Denied. This statement is a conclusion of law to which there exists a dispute.

16. Admit.

17. Admit.

18. Admit only that Rosciti owns the majority interest in Castle. U.S. Fire is without sufficient knowledge to either admit or deny whether Rosciti received compensation from Castle.

**B. SOUTH SHORE UTILITY CONTRACTORS, INC.**

19. Admit.

20. Admit.

21. Admit.

**C. THE NEW BEDFORD PROJECT A/K/A THE EARLE STREET SEWER PROJECT**

22. Denied to the extent that the phrase "first project" is vague and subject to varied interpretation. South Shore was simultaneously performing work on two separate public works sewer projects located in New Bedford, Massachusetts. *See* Kunkel Aff. ¶ 4, Ex. B at 44:17-25, 45:1.

23. Denied. The City of New Bedford entered into two separate contracts with South Shore as the general contractor for sewer line work. *See* Kunkel Aff. ¶ 4, Ex. B at 44:17-25, 45:1.

24. Admit only that one of the projects located in New Bedford, MA is referred to as the Earle Street Sewer project.

25. Denied to the extent that the term "contract" is undefined as South Shore entered into two separate contracts with New Bedford. U.S. Fire admits that the contract amount for the Earle Street project exceeded $3,000,000.

**1. THE NEW BEDFORD PAYMENT BOND**

26. Denied to the extent that the phrase "New Bedford Project" is unclear and subject to varied interpretations as South Shore was simultaneously performing two separate public works sewer projects located in New Bedford, Massachusetts. U.S. Fire admits only that it issued Construction Payment Bond no. 6102446391 with South Shore, as principal, and the City of New Bedford, Massachusetts, as obligee, in connection with the Earle Street Sewer project.

27. Admit only that U.S. Fire issued the referenced payment bond. The statement regarding the purpose and scope of the payment bond is a conclusion of law to which there exists a dispute.

28. Admit only that the referenced payment bond contains signatures for the referenced names.

**D. THE BURRILLVILLE PROJECT A/K/A THE GLENDALE VILLAGE PROJECT.**

29. Denied to the extent that the phrase "second project" is vague and subject to varied interpretation. U.S. Fire admits that the claims asserted by Castle in this matter relate to public works sewer projects.

30. Denied to the extent that the phrase "[t]his project" is undefined. U.S. Fire admits that South Shore performed work on a project located in Burrillville, Rhode Island.

31. Admit.

32. Admit.

33. Admit.

**1. THE BURRILLVILLE PAYMENT BOND**

34. Admit only that U.S. Fire issued the referenced payment bond. The statement regarding the purpose and scope of the payment bond is a conclusion of law to which there exists a dispute.

35. Admit.

36. Admit only that the referenced payment bond contains signatures for the referenced names.

**E. SOUTH SHORE RENTS EQUIPMENT FROM CASTLE TO PERFORM ITS WORK ON THE NEW BEDFORD AND THE BURRILLVILLE PROJECTS.**

37. Admit.

38. Denied to the extent that the phrase "this equipment" is undefined and the factual assertion fails to reference any projects.

39. Denied. This statement is a conclusion of law to which there exists a dispute. Based on Rosciti's "insider" status, Castle is not a proper claimant under the payment bonds issued by U.S. Fire. In addition, based on the deposition testimony of Rosciti and Clifford, the corporate officers of Castle, as well as the documentation (or lack thereof) submitted by Castle in support of its alleged claim, there are genuine issues of material fact regarding: (1) whether Castle's undertook reasonable efforts to mitigate its alleged damages; and (2) whether equipment allegedly rented by Castle to South Shore was used or employed on the Earle Street project. *See* Kunkel Aff. ¶ 4, Ex. B at 45:25, 46:1-24; Kunkel Aff. ¶ 6, Ex. D at 75:18-23, 77:18-22.

40. Admit only that Castle has submitted a claim in the amount of $97,905.00 in connection with the Glendale Village Project, but deny U.S. Fire owes Castle based on the "insider" status of Rosciti and the failure of Castle to mitigate its alleged damages.

41. Denied. Based on Rosciti's common ownership and control of South Shore and Castle, the rates charged by Castle to South Shore were below market rates. Rosciti testified:

> Q. And when South Shore would rent equipment from Castle, were the, was the rental price comparable to the market price for rental equipment?
>
> A. It was reduced.
>
> Q. And why was it reduced?
>
> A. Because I didn't feel that it was appropriate to charge South Shore Utility a higher price than it should be paying.
>
> Q. … [W]as South Shore Utility paying around the same price that other contractors were paying?
>
> A. They were paying less.

Q. They were paying less?

A. It was thirty percent reduced.

Q. So, South Shore was paying Castle thirty percent less for equipment than third party contractors would be paying Castle for renting equipment at the same time?

A. Yes.

*See* Kunkel Aff. ¶ 4, Ex. B at 35:15-25, 36:1-9.

### F. SOUTH SHORE'S FINANCIAL DIFFICULTIES CAUSES IT TO BE PLACED INTO STATE COURT RECEIVERSHIP

42. Admit.

43. U.S. Fire is without sufficient knowledge to either admit or deny.

44. U.S. Fire is without sufficient knowledge to either admit or deny.

45. U.S. Fire is without sufficient knowledge to either admit or deny.

46. Admit only that South Shore did not pay Castle.

47. Admit only that U.S. Fire received payment bond claims on South Shore bonded projects and that the documents attached as Exhibit A to the Affidavit of Scott K. DeMello relate to claims received by U.S. Fire.

48. Admit only that South Shore was petitioned into receivership.

49. Denied. The "intent of South Shore" is an issue of fact. In addition, Rosciti, as President and Treasurer of South Shore, made the decision not to pay Castle. Rosciti testified:

Q: Now, as president of South Shore, did you make a decision not to pay Castle for certain equipment rental?

A: Yes

Q: And why did you make that decision?

A: Because I had other people banging on the door for money, and Castle was probably the easiest people not to pay.

Q: And why would they be the easiest people not to pay?

A: Because I own [Castle].

*See* Schwartz Cert. ¶ 5, Ex. C at 41:1-10.

**G. USFIC DENIES CASTLE'S BOND CLAIMS ON BOTH PROJECTS.**

50. Denied to the extent that the phrase "New Bedford" is unclear and subject to varied interpretations as South Shore was simultaneously performing two separate public works sewer projects located in New Bedford, Massachusetts. U.S. Fire admits that Castle filed payment bond claims with U.S. Fire in connection with the Earle Street and Glendale Village projects.

51. Denied. U.S. Fire denied Castle's claims based on Rosciti's common ownership and control of South Shore and Castle, and specifically reserved all rights and defenses. *See* Schwartz Aff., Ex. J.

52. Admit.

53. Admit.

54. Admit.

UNITED STATES FIRE INSURANCE COMPANY,
Defendant/Third-party Plaintiff,
By its Attorneys,

/s/ Stephen J. Brouillard
Stephen J. Brouillard, Esq. # 6284
Orson and Brusini Ltd.
325 Angell Street
Providence, RI 02906
Tel.: (401) 223-2100
Fax: (401) 861-3103
Email: sbrouillard@orsonandbrusini.com

/s/ Adam R. Schwartz
Adam R. Schwartz, Esq., *pro hac vice*
Christopher E. Kunkel, Esq., *pro hac vice*
McElroy, Deutsch, Mulvaney & Carpenter, LLP
1300 Mount Kemble Avenue
Morristown, NJ 07962
Tel.: (973) 993-8100
Fax: (973) 425-0161
Email: aschwartz@mdmc-law.com
ckunkel@mdmc-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2008 this document has been filed electronically with the Court, is available for viewing and downloading from the ECF system, and has been served by first class mail, postage prepaid, on the following individuals:

/s/ Stephen J. Brouillard